(No. 37682.—

CLIFTON E. GARNER *et al.,* Appellants, *vs.* THE CITY OF CARMI, Appellee.

*Opinion filed September 27, 1963.*

HENRY G. WALKER, of Carmi, for appellants.

DAVID L. STANLEY, of Carmi, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiffs, Clifton E. Garner and Mary Louise Garner, appeal from a declaratory judgment of the circuit court of White County which sustained the validity of a zoning ordinance of the city of Carmi. The trial judge has certi-

fied that the validity of a municipal ordinance is at issue and that the public interest requires a direct appeal to this court.

The property involved in this action is a two-block area bounded on the north by Cherry Street, on the south by Robinson Street, on the west by Slocumb and Third streets, and on the east by Sand and Jessup streets. Main Street, which runs parallel with and between Cherry and Robinston streets, divides the property so that one block lies north and the other block south thereof. Except for the Washington Elementary School situated at Robinson and Sand streets, a vacant insurance office on Jessup Street, and a real-estate office operated in conjunction with a residence at the intersection of Main and Slocumb streets, the entire area, consisting of approximately 31 lots, is devoted solely to residential use. The homes situated therein are generally family residences which, although at least 40 years old, have been well-kept, are nicely landscaped, and in some instances have recently been extensively remodeled. The residence situated on the north side of Main Street at its intersection with Third Street is owned by Jessie Cox, and adjoining the Cox property on the east is the plaintiffs' residence. Some four other homes extend easterly on the north side of Main Street to Jessup Street, and five residences are situated on the south side of Main Street westerly from Washington School to Slocumb Street.

Except for a church which is located just across Third Street from the Cox parcel, an old telephone building at the northwest corner of Cherry and Jessup streets, and a business parcel on the south side of Robinson Street across from Washington School, the entire area to the north, south, and west of the subject property is zoned for and used as residential property. However, across Jessup and Sand streets from the subject property, and extending easterly for approximately five blocks, lies Carmi's chief business district.

Under the original zoning ordinance enacted in 1940, the city of Carmi was separated into a residential and a business district, Jessup and Sand Streets being a dividing line between the two. Other than professional offices, no business could be located in a residential area unless approved by 75% of the neighboring land owners and by the city council. About 1956 and again in 1959, Cox circulated petitions to authorize the construction of a gasoline filling station on his property but he was unable to acquire the necessary signatures. In 1960 Cox appeared before the city council to request the rezoning of his tract, but instead of acting on the request, the council decided to study the zoning ordinance as a whole, and a seven-man commission was appointed by the mayor for such purpose. In the spring of 1961 the commission, by written report, recommended that the city be divided into four separate zones. Zone I was to be industrial; Zone II, which encompassed the main business district, was to be continued for business purposes; Zone III, which was made up solely of the area now in dispute, was marked residential, as was Zone IV. However, these recommendations were never acted upon, and after the municipal elections of April, 1961, the mayor appointed a new commission, with himself as chairman, to again study the matter. In its subsequent report the latter commission recommended the zoning of the city substantially as had its predecessor except that, under the latter report, Zone III was to be reclassified from residential to business use. After public hearings were conducted, the council in 1962 approved the report and passed a new city zoning ordinance in accordance with the latter commission's recommendations. Thereafter, the instant declaratory judgment action was filed by the plaintiffs alleging the invalidity of the ordinance insofar as it applied to Zone III and requesting injunctive relief against its enforcement.

At the hearing before the trial court various homeowners and residents, including plaintiffs, testified in op-

position to the new zoning ordinance. It was their testimony that a business classification of the area would increase traffic, endanger the children going to and from Washington School, and would depreciate the value of the adjoining properties. C. F. Rebstock and John Pumphrey, both local bank appraisers, stated that a gasoline station on the Cox tract would substantially depreciate the value of plaintiffs' property. Archie Chapman, a real-estate broker, agreed that placing a commercial establishment next door would reduce the value of plaintiffs' property by forty to fifty percent. James Pomeroy, a former real-estate appraiser, expressed the opinion that the establishment of a business in a residential area initiates a state of decay and depreciation. William Jones, a professional city planner, pointed out that Zone III is predominately residential and is surrounded upon three sides by areas which are also residential in character. It was his opinion that a well-defined line of cleavage existed between the business zone and Zone III, that the highest and best use of Zone III is for residential purposes, and that the business area designated Zone II, comprising some eleven acres, was sufficient to meet the commercial needs of the city. Other individuals testified as to various properties in Zone II which were vacant and available for business uses. The minister of the church situated across from the Cox property appeared upon behalf of the congregation and expressed the opinion that noise and congestion from the proposed gasoline station would interfere with the church activities. The superintendent of Washington School, while testifying in behalf of the plaintiffs, stated that approximately 650 students are enrolled at the school and that at all times within his knowledge the area west of the school had been devoted solely to residential use.

Testifying for the city, its mayor, J. Robert Randolph, explained that he had not sought action on the first commission's report because it was submitted just before the

municipal election and the mayor thought "such a controversial issue should not be decided by an outgoing administration." He went on to relate the procedures involved in approving the new zoning ordinance and concluded with the observation that a filling station may be consistent with a high-class residential area. William Sharp, Carmi's chief of police, acknowledged that there was presently a serious traffic problem in front of Washington School, that all traffic entering the city from the south and west passes the Cox property, and that a new commercial enterprise adjacent to the school (such as a drive-in restaurant) would not help the traffic situation for the children.

It is well established that a property owner has the right to expect that the classification imposed by the original zoning ordinance will not be changed unless such is required for the public good, (*Northern Trust Co.* v. *City of Chicago,* 4 Ill.2d 432; *Phipps* v. *City of Chicago,* 339 Ill. 315; *Kennedy* v. *City of Evanston,* 348 Ill. 426,) and in determining the validity of an amendatory or revised ordinance, the factors to be considered are the same as those involved in ascertaining the legality of the initial ordinance, namely, (1) the existing uses and zoning of nearby property, (2) the extent property values are affected by the particular classification, (3) the promotion of the public welfare, (4) the relative gain to the public as compared to the hardship imposed upon the property owner, and (5) the suitability of the property for the purpose zoned. *Bohan* v. *Village of Riverside,* 9 Ill.2d 561; *La Salle Nat. Bank of Chicago* v. *City of Chicago,* 5 Ill.2d 344; *Liberty Nat. Bank of Chicago* v. *City of Chicago,* 10 Ill.2d 137.

In the present case the area designated as Zone III was initially classified for residential use, and during the 22 years prior to the 1962 ordinance many individuals purchased or improved properties therein in reliance upon the initial residential zoning. In fact one witness, Eleanor W. Pomeroy, testified that she had spent over $20,000 in re-

habilitating her home, and that the other homeowners in the block each expended from $300 to $500 each year in maintaining their premises. It also appears from the evidence that only about one half of Zone II is actually being used for business purposes and that several properties formerly devoted to commercial use are now vacant, whereas the residentially zoned areas to the north, west, and south of Zone III are actually being utilized for residential purposes. It is uncontroverted that the establishment of commercial enterprises within Zone III would severly depreciate the value of adjoining residential properties and there is no evidence to indicate that any parcel, even the Cox lot, would be more suitable or valuable for a business use. Nor does it appear that the rezoning was in the interest of public health, safety, morals, or welfare. To the contrary, plaintiffs' proof establishes that the location of businesses within this locality would increase the already heavy flow of traffic on Main Street and would be detrimental to the existing school activities. Furthermore, the divergent conclusions reached by the two zoning commissions which studied the problem tend to indicate that the public need for the reclassification of Zone III was not clearly evident.

It is our opinion that public interest did not require the changing of Zone III from residential to business use, and that in this respect the 1962 ordinance constituted an unreasonable invasion of the property rights of those individuals who had theretofore purchased homes within the area in reliance upon the original zoning ordinance. Accordingly, the judgment of the circuit court of White County is reversed and the cause is remanded with directions to grant the relief prayed.

*Reversed and remanded, with directions.*