CORKILL ELECTRIC COMPANY, Indiv. and on behalf of Illinois Petroleum Company, Inc., Plaintiffs and Counterdefendants-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants (Burnham Park Planning Board, Defendant and Counterplaintiff-Appellee).

First District (3rd Division) Nos. 1—88—3805, 1—89—0972 cons.

Opinion filed April 4, 1990.

Robert Fioretti, of Chicago, for appellants.

James D. Brusslan, of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

This case is a consolidated appeal by Corkill Electric Co. (Corkill) from judgments entered by the circuit court in favor of the Burnham Park Planning Board (Burnham Park). In appeal No. 1—88—3805, Corkill argues that the court erred when it dismissed Corkill's estoppel defense, when it severed Burnham Park's counterclaim, and when it granted Burnham Park's motion for summary judgment. In appeal No. 1—89—0972, Corkill argues that the court erred when it granted Burnham Park's petition for attorney fees.

On May 15, 1985, the Chicago city council issued an order directing that a permit be issued for the erection of a "sign/signboard" at 41 West Congress Parkway. The order provided that the sign "shall comply with all applicable provisions of Chapter 194A of the Chicago Zoning Ordinance and all other applicable provisions of the Municipal Code of the City of Chicago governing the construction and maintenance of outdoor signs, signboards and structures." The permit was issued on November 1, 1985, and in early 1986, Corkill began construction of two illuminated advertising signs measuring 12 feet by 36 feet.

On November 28, 1986, the department of zoning denied Corkill's application for zoning certification on the ground that the sign failed to conform with the applicable provisions of section 9.9(5) of the Municipal Code of Chicago (Chicago Municipal Code ch. 194A, par. 9.9(5)

(1988)). Section 9.9(5) provides that no advertising sign shall be permitted within 500 feet of any major route, including those portions of the comprehensive superhighway system of the City of Chicago, approved by the city council. The department found that Corkill's sign was located too close to property acquired for the comprehensive superhighway system, in violation of section 9.9(5).

Corkill appealed the department's decision to the zoning board of appeals. Prior to the hearing on Corkill's appeal, Burnham Park submitted a memorandum in support of the denial of zoning certification. In its memorandum, Burnham Park argued that the department's decision should be affirmed and the signs removed.

On March 20, 1987, the board adopted a resolution denying Corkill's appeal and affirming the department's decision. The board found that city records indicated that in 1940, an ordinance was passed designating Congress Parkway as part of the west route of the comprehensive superhighway system and that, therefore, Corkill's sign was located on property that abutted the comprehensive superhighway system, in violation of section 9.9(5).

Subsequently, Corkill filed a complaint in administrative review in the circuit court of Cook County. Corkill's complaint named as defendants the City of Chicago, the zoning board of appeals, the department of zoning, and Burnham Park, among others.

Burnham Park filed a counterclaim against Corkill seeking an order requiring Corkill to remove the signs. Burnham Park's counterclaim, which was filed pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—15), also sought attorney fees pursuant to the provisions of that section.

At a hearing on October 3, 1988, the circuit court affirmed the findings of the board that Congress Parkway was a part of the comprehensive superhighway system and that the sign was maintained within 500 feet thereof in violation of section 9.9(5). However, after severing Burnham Park's counterclaim, the court remanded Corkill's administrative review action to the board for a determination of whether the city was estopped from denying Corkill's application for zoning certification.

On October 17, 1988, Burnham Park filed a motion for summary judgment on its counterclaim. Attached to the counterclaim was the affidavit of Barbara Lynne, Burnham Park's executive director. In her affidavit, Lynne stated that approximately one-half of Burnham Park's members were owners or tenants of real property located within 1,200 feet of the signs at 41 West Congress Parkway.

At the hearing on Burnham Park's motion for summary judg-

ment, held November 18, 1988, Corkill argued that Burnham Park, as well as the city, was estopped from maintaining an action to remove the signs. Questions also were raised at the hearing about Burnham Park's standing to maintain an action under section 11—13—15.

Following the hearing, the court entered an order granting the motion in part. The court found that Corkill's signs were maintained in violation of section 9.9(5) of the Municipal Code and that even if Corkill could assert a successful defense of estoppel against the city, the defense would not be applicable to Burnham Park because there was no privity between Burnham Park and the city.

The court also granted Burnham Park leave to file *instanter* an amended counterclaim and affidavit showing that Burnham Park itself was a tenant or owner of real property located within 1,200 feet of the sign. The amended affidavit stated that Burnham Park had been a tenant of property located at 343 South Dearborn, and within 1,200 feet of Corkill's sign, since 1981. The amended affidavit further stated that between 1980 and 1987, Burnham Park's tenancy was pursuant to an oral lease and that Burnham Park currently had a written lease which ran until December 1988.

Corkill was given one week to respond to the amended counterclaim and affidavit, and a hearing on the issue of whether Burnham Park was a tenant of real property within 1,200 feet of Corkill's sign was scheduled for November 28, 1988.

Corkill failed to respond to Burnham Park's affidavit, and at the November 28 hearing, the court entered an order granting Burnham Park's motion for summary judgment and requiring Corkill to remove the sign within 30 days.

On November 30, 1988, Burnham Park filed its petition for attorney fees pursuant to section 11—13—15. The petition was accompanied by the affidavit of Burnham Park's counsel, James Brusslan of Mayer, Brown & Platt, stating that Burnham Park had incurred fees and expenses totaling $22,659.35. Also attached to the petition were photocopies of computer printouts showing the work performed, the hours expended, and the rates charged.

In its response to Burnham Park's petition for fees, Corkill argued that Burnham Park was not entitled to fees because its actions were duplicative of those of the city. Corkill also argued that Burnham Park's request for $22,659.35 was unreasonable "in light of the worked performed and the ends accomplished" and that Burnham Park had improperly included charges for "incidentals" such as word processing and docketing.

At the hearing on Burnham Park's petition, the trial court found

that Burnham Park was entitled to fees under section 11—13—15. The court also granted Burnham Park leave to file an affidavit establishing that the fees charged were reasonable and gave Corkill seven days to file a counteraffidavit challenging the reasonableness of the fees.

At a subsequent hearing, Burnham Park presented an affidavit of reasonableness prepared by Barbara Bertok, also of Mayer, Brown & Platt. The affidavit stated that Bertok had reviewed the fee petition and that, based on her knowledge of the billing practices at Mayer, Brown & Platt and the rates charged by other attorneys, the amount requested was reasonable.

Corkill's counsel informed the court that Corkill had not filed a counteraffidavit challenging the reasonableness of the fees. Counsel stated that, instead, Corkill was going to join the attorney fees issue with its appeal from the court's order granting Burnham Park's motion for summary judgment. The trial court subsequently entered a judgment for fees in the amount of $26,488.60. Corkill appeals from the trial court's summary judgment in Burnham Park's favor and from the court's award of fees.

I

In appeal No. 1—88—3805, Corkill argues that the trial court erred in entering summary judgment in Burnham Park's favor. Corkill argues that there were genuine issues of fact and that Burnham Park was not entitled to judgment as a matter of law. Corkill also argues that the trial court erred when it found that Burnham Park was not estopped from seeking to have the sign removed and when it severed Burnham Park's counterclaim.

We find that any claim by Corkill that the trial court erred when it severed Burnham Park's counterclaim has been waived. The record shows that at the October 3 hearing, Corkill argued that Burnham Park could not bring a section 11—13—15 action by filing a counterclaim in an administrative review action. And at the November 18 hearing, after the administrative review proceeding was remanded for a finding on the issue of whether the city was estopped from asserting that the sign violated a zoning ordinance, Corkill argued that Burnham Park also should be estopped from asserting that the signs violated the ordinance.

At no time did Corkill object to severance nor did it ever move the court to stay proceedings on Burnham Park's counterclaim pending the outcome of the administrative review proceeding. Thus, Corkill cannot now assert for the first time on appeal that it was er-

ror for the trial court to sever the two proceedings.

We also find that there is no merit to Corkill's contention that the trial court's finding that Corkill's estoppel defense was inapplicable to Burnham Park constituted plain error.

In support of its claim that its estoppel defense was applicable against Burnham Park, Corkill cites *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605, in which the Illinois Supreme Court held that the City of Des Plaines was estopped from enforcing a zoning ordinance prohibiting the construction of a gas station within 300 feet of a church. Pointing out that a permit for the gas station had been issued by the city, that the city made no attempt to revoke the permit for seven months, and that the plaintiff had expended large sums of money in reliance upon the permit, the supreme court concluded that it would be unjust to enforce the ordinance against the plaintiff.

Corkill points out that application of the doctrine of equitable estoppel was extended to individual property owners in *Sharrett v. Campbell* (1982), 109 Ill. App. 3d 1, 440 N.E.2d 167, *Richards v. City of Highland* (1978), 59 Ill. App. 3d 692, 375 N.E.2d 1023, and *Parsons v. Guild Grain Co.* (1970), 125 Ill. App. 2d 59, 259 N.E.2d 806, and argues that, therefore, the trial court erred in finding that the defense of estoppel could not be applied against Burnham Park.

In *Sharrett*, the appellate court found that plaintiffs were estopped from claiming that defendants had violated an ordinance requiring property zoned "R–S" to have a 15-foot side yard where, at the time defendants began construction and throughout the following 4½ months, plaintiffs, defendants, and city officials all believed that the property was zoned "R–1" and, therefore, required only a six-foot side yard.

In *Richards*, the court found that plaintiffs were estopped from asserting that a proposed building was in violation of a zoning ordinance prohibiting multiple-family dwellings because plaintiffs had failed to object to other nonconforming uses constructed in the area.

Finally, in *Parsons*, estoppel was applied against a plaintiff who was shown defendant's building plans before defendant applied for a permit and who, although aware that construction had begun, waited more than six months before filing an action objecting to defendant's structure.

We find that *Sharrett*, *Richards*, and *Parsons* are distinguishable and that the trial court did not err in refusing to find that Burnham Park was estopped from maintaining its action.

■ In order to establish equitable estoppel, it must be shown

that: (1) there was some conduct by the party against whom the estoppel is alleged, constituting either a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged knew that the representations made were untrue; (3) the party claiming the benefit of estoppel did not know the representations to be false, either at the time they were made or at the time they were acted upon; (4) the party estopped either intended or expected that his conduct or representations would be acted upon by the party asserting estoppel; (5) the party seeking the benefit of the estoppel relied or acted upon the representations; and (6) the party claiming the benefit of the estoppel would be placed in a position of prejudice if the party against whom the estoppel is alleged were permitted to deny the truth of the representations made. *Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 416 N.E.2d 385; *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019.

■■ Unlike *Sharrett, Richards* and *Parsons*, in the present case there were no allegations of conduct on the part of Burnham Park that was relied upon by Corkill or that was intended to mislead or conceal. Accordingly, there is no basis for Corkill's assertion that Burnham Park is estopped from maintaining an action under section 11—13—15 to remove the sign.

■■ Corkill maintains that because there is an "identity of interests" between the city and Burnham Park, if the city is found to be estopped from maintaining an action to remove the sign, Burnham Park also should be estopped. We disagree.

The doctrine of estoppel operates only between parties and their privies. (*Willowbrook*, 92 Ill. App. 3d at 1081.) Privity contemplates a mutual or successive relationship to the same property rights which were the subject matter of a previous proceeding. *Sweeting v. Campbell* (1954), 2 Ill. 2d 491, 119 N.E.2d 237; *Simcox v. Simcox* (1988), 175 Ill. App. 3d 473, 529 N.E.2d 1032.

■■ In the present case, the interests of Burnham Park as a tenant of real property within 1,200 feet of Corkill's sign and the interests of the city are neither mutual nor successive. Thus, there is no privity between Burnham Park and the city and the fact that the city might have been guilty of misrepresentation or concealment in issuing the permit does not warrant application of the doctrine of equitable estoppel to Burnham Park.

We now turn to Corkill's arguments concerning the propriety of the trial court's actions in granting summary judgment for Burnham Park. Corkill advances four grounds for reversing the trial court's

judgment: (1) Corkill's estoppel defense precluded summary judgment in Burnham Park's favor; (2) Burnham Park's affidavit that in 1987 it had an oral lease at property within 1,200 feet of Corkill's sign was insufficient to establish that it had standing under section 11—13—15; (3) Corkill's administrative review action was still pending and until there was a final decision by the board on whether the city was estopped, there could be no violation to enjoin; and (4) the findings and decisions of the board were against the manifest weight of the evidence.

■ We have already found that there is no merit to Corkill's first argument alleging that Burnham Park was estopped from seeking removal of the sign; we now find that Corkill has waived its second argument challenging Burnham Park's standing to maintain a section 11—13—15 action.

At the November 18 hearing, Corkill argued that Burnham Park's counterclaim and affidavit did not establish that Burnham Park was a tenant of real property within 1,200 feet of the sign at 41 West Congress Parkway. The trial court granted Burnham Park leave to file an amended counterclaim and affidavit. Corkill was given a week to respond to Burnham Park's affidavit.

Burnham Park filed an affidavit stating that in May 1987, it was a tenant, pursuant to an oral lease, of property within 1,200 feet of Corkill's sign. Corkill did not respond within the time allotted and at a subsequent hearing, Corkill's counsel stated about the oral lease: "I have not had a chance to take discovery with regard to that. I do not know if the Court—there's an affidavit to that effect so I would assume that they are probably correct that they have or may have had an oral lease."

■ It is well settled that the sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made either by a motion to strike, or otherwise, in the trial court. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397; *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) Because Corkill failed to attack the sufficiency of Burnham Park's affidavit in the trial court, any challenge thereto has been waived.

■ In its third argument, Corkill asserts that the trial court could not grant summary judgment on Burnham Park's counterclaim until after à final decision by the board on Corkill's complaint. Corkill contends that if the board finds that the city is estopped from enforcing section 9.9(5), there would be no violation and, therefore, nothing to enjoin. We disagree.

In its October 3 order, the trial court affirmed the board's finding

of a violation and remanded the complaint solely for a determination of whether the city was estopped from enforcing section 9.9(5) against Corkill. A finding by the board that the city was estopped would alter neither the board's previous finding that a violation existed, nor the trial court's ruling affirming that finding and, as discussed above, it would have no effect on Burnham Park's right to maintain an action under section 11—13—15.

In its final argument, Corkill contends that the board's finding of a violation was against the manifest weight of the evidence. Corkill claims that the ordinance designating Congress Parkway as a part of the comprehensive superhighway system is "antiquated" and should not have been relied upon by the board in finding a violation. Again we disagree.

■ Section 9.9(5) of the Chicago Municipal Code clearly states that no advertising sign shall be permitted within 500 feet of any major route, including those portions of the comprehensive superhighway system of the City of Chicago. The journal of the city council of Chicago clearly shows that in 1940, Congress Parkway was designated as part of the west route of the comprehensive superhighway system. This designation has never been changed. Thus, we find that the board's decision was proper under the plain language of section 9.9(5) and there is no merit to Corkill's claim that the decision was against the manifest weight of the evidence.

## II

In appeal No. 1—89—0972, Corkill argues that Burnham Park is not entitled to fees under section 11—13—15; that Burnham Park failed to present sufficient evidence of the reasonableness of its fees; that the award included amounts not related to the finding of a violation under section 11—13—15; and that the amount of the award was excessive.

■ Section 11—13—15 provides in part:

"If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such." Ill. Rev. Stat. 1987, ch. 24, par. 11—13—15.

Corkill argues that this section is not mandatory and that, because Burnham Park's actions in the litigation merely duplicated those of the city, the trial court erred in awarding fees to Burnham

Park. Corkill bases its argument on this court's decision in *Launius v. Najman* (1984), 129 Ill. App. 3d 498, 472 N.E.2d 170.

In *Launius*, the City of Chicago filed an action pursuant to section 11—13—15 seeking to enjoin defendants from operating a parking lot in violation of a Chicago zoning ordinance. Eleven months later, the plaintiff filed a section 11—13—15 action, as legal titleholder to property within 1,200 feet of defendants' property. Plaintiff's complaint alleged the same violation as alleged in the city's complaint and sought injunctive relief, damages, and attorney fees. A settlement was reached between the city and defendants, permanently enjoining defendants from operating a parking lot on the property. Subsequently plaintiff and defendants proceeded to trial on plaintiff's action for damages and attorney fees. Following a bench trial, the court denied plaintiff's request for attorney fees on the ground that its action was duplicative of the city's action. This court affirmed the trial court's denial of plaintiff's request for fees.

The court found that although the attorney fees provision of section 11—13—15 is mandatory in an action brought by private citizens whose municipal officials are slow or reluctant to act or where the local authorities' actions are not protective of their interests, it did not follow that private plaintiffs allowed to intervene to protect their unique interests were also entitled to attorney fees under section 11—13—15 where the violation alleged is already the subject of the municipality's prosecution. The court stated that once compliance had been accomplished by the city's action, there was no basis upon which to award fees to the plaintiff. *Launius*, 129 Ill. App. 3d at 502.

■■■ In the present case, it was the efforts of Burnham Park and not those of the city which resulted in the order to remove the sign. Unlike *Launius*, here there was never any attempt made by the city to enjoin the violation. Burnham Park filed the only action seeking removal of the sign, and compliance with section 9.9(5) was accomplished solely through the actions of Burnham Park. The city's participation in the proceedings was minimal, and there is no merit to Corkill's claim that Burnham Park's actions merely duplicated those of the city.

Corkill next alleges that Burnham Park failed to meet its burden of presenting sufficient evidence in support of its petition for attorney fees. According to Corkill, the affidavit of Barbara Bertok did not constitute competent evidence of the reasonableness of Burnham Park's fees. We disagree.

■■■ Corkill has cited no cases, and this court is aware of none, in which it has been held that an affidavit of reasonableness may not be

submitted by an attorney from the firm seeking the fee award. Further, in *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424, this court upheld an award of fees where the petition was submitted along with an affidavit of reasonableness prepared by a partner in the firm seeking the award. Although this court affirmed the trial court's disallowance of several of the charges contained in the fee petition on other grounds, neither this court nor the trial court found that the affidavit submitted was incompetent to establish reasonableness.

Corkill also alleges that the computer printouts submitted by Burnham Park in support of its petitions for fees failed to set forth with specificity the costs incurred and that the amount sought in Burnham Park's fee petition was excessive and unreasonable. We find that any argument concerning the reasonableness of Burnham Park's fees has been waived.

■■■ It is well settled that a party seeking an award of attorney fees bears the burden of providing the trial court with sufficient evidence of the reasonableness of the fees and that the fee petitioner must produce detailed records specifying the services performed and by whom, the time expended, and the rate charged. (*Kaiser*, 164 Ill. App. 3d at 984.) However, while the general rule is that the reasonableness of fees is a matter subject to proof, a party who fails to object below is not entitled to the benefit of the rule that proof of the reasonableness of the fee must be made. *City of Champaign v. Roseman* (1958), 15 Ill. 2d 363, 155 N.E.2d 34.

In the present case, the trial court made a preliminary finding that Burnham Park was entitled to fees and that the hours set forth in its petition and the rates charged were reasonable. This finding was based on Brusslan's affidavit and was made contingent upon Burnham Park presenting a second affidavit of reasonableness. When Corkill protested the trial court's finding, the court replied that it had nothing before it that indicated that the fees were not reasonable. Corkill requested an opportunity to file counteraffidavits in response to Burnham Park's affidavits and was given a week to reply.

■■■ However, at a subsequent hearing, Corkill informed the court that it had chosen not to file a response. The trial court then stated that its purpose in continuing the action was to give Corkill an opportunity to respond on the issue of reasonableness, that it "didn't want the record to go up without my giving [Corkill] a chance to respond." In response, Corkill's counsel indicated that Corkill intended to appeal only the issue of whether the fees were authorized under section 11–13–15, adding that "since we haven't filed an affidavit, I

don't think we can go into details of reasonableness." Thus, the record establishes that Corkill was given an opportunity to dispute the reasonableness of Burnham Park's fees, that Corkill chose not to do so, and that Corkill was fully aware of the consequences of its choice.

In conclusion, we find no error in the trial court's severance of Burnham Park's counterclaim, and we find that the trial court properly entered summary judgment in Burnham Park's favor. We also find that Burnham Park was entitled to attorney fees pursuant to section 11—13—15 and that any claim that the amount of the fee award was unreasonable was waived. For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and FREEMAN, JJ., concur.