MARIA RODRIGUEZ *et al.*, Plaintiffs-Appellants, v. DUNCAN Y. HENDERSON, Indiv. and as a Partner d/b/a Willow-Damen Partnership, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—1562

Opinion filed July 17, 1991.

James P. Chapman & Associates, Ltd., of Chicago (James P. Chapman and Alan Mills, of counsel), for appellants.

Sidley & Austin, of Chicago (Frederic J. Artwick and David B. Johnson, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiffs appeal from dismissal of their amended complaint, which alleged the invalidity of a city rezoning ordinance. Grounds for dismissal were that at least some plaintiffs lacked standing and that some or all had failed to state a claim. We affirm in part, reverse in part, and remand.

In their amended complaint, plaintiffs alleged that the City of Chicago acted unlawfully when, by ordinance, it rezoned a parcel of Chicago property (the former Ludwig Drum Company factory buildings, on 2.42 acres at Willow Street and Damen Avenue) from an M1-2 restricted manufacturing district to a C1-2 restricted commercial district and then to a commercial-residential planned development. Chicago City Council J. (Sept. 22, 1988), at 18099, 18103—07, codified at 1990 Chicago Zoning Ordinance (Chicago Municipal Code ch. 194A (1984)) (hereinafter Chicago Zoning Ordinance) map 5-H, at 75B (CRPD No. 455).

Under the rezoning ordinance, the Ludwig Drum property is to be used for residential units, "work/live" units, and business, commercial, and retail establishments. Each work/live unit is to be used as a full- or part-time residence in conjunction with a business, commercial, or retail use in the same space. Of the four buildings on the property, the developers are to make "all reasonable efforts" to establish work/live uses in three. However, exclusively residential uses are prohibited in only one of the buildings. The maximum number of dwelling units permitted is 115. The number of off-street parking spaces required for all uses is 147.

Plaintiffs include the owners of two nearby factories; the owner of a nearby residential building and her son, both of whom reside in her building; and nearby residential lessees. Ex-Cell Metal Products Company, Inc., and Churchill Cabinet Company are the factory owners. Maria Rodriguez and Raul Rivera are the mother and son. Karen

Sandler, Arlene Rosado, and Glenn M. Picher are the other residential tenants.

Defendants are the intended developers; their land trustee in title, La Salle National Bank, as trustee under trust No. 110709; and the City of Chicago (the City). The developers are Duncan Y. Henderson and Leonard Webster (individually and as partners) and their partnership, Willow-Damen Partnership.

The gravamen of plaintiffs' case is that, by artificially driving up property values, the rezoning will displace plaintiffs as they become unable to afford continued residential or manufacturing use of their properties because of rising rents or taxes, increased production or maintenance costs, and destroyed neighborhood economic and social fabric. Scholarly literature has commented on influxes of higher-income residents as they affect established lower-income residential neighborhoods. See, *e.g.*, Bryant & McGee, *Gentrification and the Law: Combatting Urban Displacement*, 25 Wash. U.J. Urb. & Contemp. L. 43 (1983); Note, *Reassessing Rent Control: Its Economic Impact in a Gentrifying Housing Market*, 101 Harv. L. Rev. 1835 (1988).

### PROCEDURAL HISTORY

In count I of their amended complaint, because of a variety of alleged injuries attributed to the rezoning, plaintiffs contended that the rezoning was arbitrary and capricious in violation of their State substantive due process rights. In count II, they alleged that the rezoning violated the City's own rezoning criteria, and in count III they alleged that the rezoning procedure violated the City's procedural requirements. In each count, plaintiffs asked the court to declare the rezoning ordinance void and to enjoin defendants from using or developing the Ludwig Drum property in any manner not permitted in M1-2 Restricted Manufacturing Districts.

The developers successfully moved under section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) to dismiss the amended complaint. The City joined in the motion. Earlier, the developers had successfully moved to dismiss the original complaint, and their second motion incorporated the contentions of their first. This opinion discusses the motions and rulings *en bloc*.

The developers contended that several plaintiffs owned no real property in the vicinity of the rezoned property and for that reason lacked standing. The developers also contended that the damage allegations by all plaintiffs were indefinite, contradictory, or speculative and that, because all plaintiffs had thus failed to allege any legally

cognizable injury or special damages arising from the rezoning ordinance, all plaintiffs lacked standing.

In ruling on dismissal motions, the court held that the plaintiffs who owned no real property in the vicinity (*i.e.*, Rivera, Sandler, Rosado, and Picher) lacked standing.

The court held further that the plaintiff who owned residential property (*i.e.*, Rodriguez) had not stated a claim on which relief could be granted, because "[t]he mixed message sent by a residential owner challenging the propriety of a residential use for the drum factory does not allege a violation of the zoning ordinance or of her constitutional rights." In addition, the court was "unaware of precedent which would recognize an increase in the property value as an injury" to her.

Moreover, the court held that plaintiffs failed to allege facts showing that the Chicago city council did not consider the factors set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65, and that accordingly the complaint failed to state a claim based on an arbitrary and capricious act of rezoning.

Finally, the court held that the injury alleged by the manufacturing plaintiffs (*i.e.*, Ex-Cell and Churchill) was too speculative to support a claim for relief.

ANALYSIS

A. COUNT I: CONSTITUTIONALITY

1. *LA SALLE* FACTORS

The trial court's dismissal order was generally grounded on a holding that plaintiffs had failed to state a claim of arbitrary and capricious rezoning that would have violated their substantive due process rights under section 2 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §2). In the trial court's view, this was because plaintiffs had failed to allege facts showing that the city council did not properly consider factors listed in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.

A zoning ordinance is presumed valid, and a successful challenge requires proof, by clear and convincing evidence, that its enactment was arbitrary, capricious, or unrelated to the public health, safety, and morals. (*La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68-69.) If the reasonableness of a zoning ordinance is merely debatable, the courts will not interfere. *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 576, 421 N.E.2d 285, 297.

■ The *La Salle* court identified six factors as being "among the facts which may be taken into consideration" when determining a zoning ordinance's validity: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of a plaintiff's property values promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in its vicinity. *La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69.

Additional factors that have been identified include (7) whether a comprehensive government zoning plan for land use and development exists; (8) if so, whether the ordinance is in harmony with it; and (9) the evidence or lack of evidence of community need for a proposed use. See *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, 167 N.E.2d 406, 411; *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 240-41, 243, 309 N.E.2d 763, 771, 773.

■ Whether a rezoning ordinance (as here) or an original zoning ordinance (as in *La Salle*) is at issue, the same factors for determining validity apply. (*Garner v. City of Carmi* (1963), 28 Ill. 2d 560, 564, 192 N.E.2d 816, 819; *Forestview*, 18 Ill. App. 3d at 243-44, 309 N.E.2d at 773.) The list of factors is not exclusive, no one factor controls, and validity is to be determined on the facts and circumstances of each ordinance. (*La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69.) However, in several cases it has been said that "[o]f paramount importance is whether the restrictions imposed on the property are in conformity with the uses and zoning of nearby property." *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 381, 402 N.E.2d 719, 728.

The nonexclusive list of *La Salle-Sinclair* factors encompasses a broad range of considerations relevant to a zoning ordinance's constitutionality, but it does not necessarily preclude the relevance of other factors hitherto unaddressed by the cases. Contrary to defendants' assertion, the list of factors is not comparable to the essential elements that must be pleaded and proved in every case to support a contract or tort action.

■ Accordingly, while failure of a complaint to plead a cause of action in terms of all the *La Salle-Sinclair* factors may indicate its vulnerability to dismissal, dismissal should not occur if the pleading

theory otherwise supports a claim of unconstitutional arbitrariness or capriciousness. This is particularly true since defendants have not cited a single precedent for applying *La Salle* factors to dismiss a zoning challenge at the pleading stage. (*Cf. Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 583-84, 325 N.E.2d 799, 806-07 (trial court erred in dismissal at pleading stage); *Brown v. County of Lake* (1966), 67 Ill. App. 2d 144, 154-55, 213 N.E.2d 790, 794 (same).) The *La Salle* factors have consistently been used to judge the strength of a plaintiff's case after a full presentation of evidence at trial. Not all of them can even be meaningfully applied at an earlier stage.

■ Still, besides significantly influencing a decision on whether zoning plaintiffs have proved their case at trial, the *La Salle-Sinclair* factors can shed some light on the pleading adequacy of the present complaint. For that reason, we shall review the amended complaint in that light.

The *La Salle* factors were enunciated in the context of a case in which a property *owner* challenged an *original* zoning ordinance that *denied* a proposed new use. The present cause involves a challenge by *neighbors* to a *rezoning* ordinance that *allows* a new use—a litigation posture that is notably different. Even though the "same" factors are said to apply in determining the validity of rezoning as in determining the validity of an original zoning ordinance, it is not past dispute whether certain *La Salle-Sinclair* factors should apply to the subject property as formerly zoned, to the subject property as rezoned, or to the neighboring property.

For present purposes, we do not attempt to resolve all differences over the *La Salle* factors' proper application. In addition, we take all well-pleaded factual allegations in the amended complaint as true (see *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505, 485 N.E.2d 372, 374).

*a. Uses and zoning of nearby property.* The immediately surrounding property is zoned M1-2 for restricted (light) manufacturing. At least some of it—the property owned by Ex-Cell directly north across Willow Street—is currently used for that purpose. Likewise zoned and used is the property owned by Churchill, which is directly west across Hoyne Avenue from Ex-Cell's property and less than a block northwest of and around the corner from the Ludwig Drum property. Less than a block north and south of the Ludwig Drum property are two small islands of property zoned C1-2 (restricted commercial district) and presently used by small retailers. Farther away

are two areas zoned B4-2 (restricted service district) (business) and much larger areas zoned R3 and R4 (general residence districts).

The edge of the nearest B4-2 property is at least two streets away from the Ludwig Drum property. The edge of the nearest R3 or R4 property is separated either by two streets and a set of railroad tracks or by three streets from the Ludwig Drum property. The beginnings of all these zones in densely populated Chicago are close enough for them to be termed "nearby," and for that reason defendants argue that the work/live use of the rezoned Ludwig Drum property would complement the mixture of uses of "nearby" properties. However, the nearest of all properties are in the surrounding M1-2 zone, followed by the properties in the two C1-2 retail islands.

In sum, the rezoning does not conform to the M1-2 zoning or use of the nearest properties; it conforms to the zoning but only slightly to the use of the nearby C1-2 islands; it conforms neither to the zoning of the more distant B4-2, R3, or R4 properties nor to the permitted uses of the B4-2 properties; and only in a general residential sense, but not in a specific economic sense, does it conform to the actual use of the R3 and R4 properties. On balance, then, the rezoning does not conform to the existing uses or zoning of nearby property.

*b. Diminution of property values.* The rezoning increases the Ludwig Drum property's value. However, at a value in excess of $1 million as industrial property, the Ludwig Drum property was far from worthless prior to rezoning.

The rezoning diminishes plaintiffs' property values. Several plaintiffs have improved their properties, entered into leases, or expanded businesses in reliance upon the Ludwig Drum property's manufacturing zoning. See *Amalgamated Trust & Savings Bank v. County of Cook*, 82 Ill. App. 3d at 382-83, 402 N.E.2d at 729 (nearby owners have right to rely on rule that zoning will not be changed except for public good).

*Manufacturing plaintiffs.* The manufacturing plaintiffs have been enabled to remain in business at their present locations partly because of the availability of a local work force, which was facilitated by the former zoning and would likewise be available to potential new manufacturer owners. Therefore, the values of those plaintiffs' property as viable manufacturing sites were enhanced by the former zoning. But, because the work force's ability to reside locally is now imperiled, the manufacturing plaintiffs' business viability and hence the values of their property as manufacturing sites are endangered by the rezoning.

The manufacturing plaintiffs will also suffer other losses of income and property value because of the rezoning. Income losses will

include costs of surmounting traffic congestion; costs of meeting environmental complaints from new Ludwig Drum residents; and higher taxes. Higher taxes are threatened if the manufacturing plaintiffs' property is assessed at higher values on the assessor's assumption that, by obtaining Ludwig Drum-type rezoning, those plaintiffs could sell their property at higher prices. Property value losses will be caused when potential purchasers take into account the foregoing items of income loss as items with which a purchaser would also have to contend. Property value losses will also result from the impact of zoning laws on present owners' ability to expand and on new owners' ability to conduct manufacturing operations, because under the Ludwig Drum rezoning the manufacturing plaintiffs' property would become subject to restrictions that did not apply under the former zoning.

*Residential plaintiffs.* The residential plaintiffs will also suffer losses as a result of the rezoning. Those losses will include increased street traffic congestion, resulting in the endangerment of children and in parking difficulty; lost job opportunities, which could have been created by use of the Ludwig Drum property for manufacturing that is impossible under the rezoning; and higher taxes or rents, caused by higher assessments resulting from the sale prices of nearby Ludwig Drum apartments. As a practical matter, the residential plaintiffs cannot avoid the higher taxes or rents by a sale or move, because selling or moving is prohibitively inconvenient or costly and because plaintiffs cannot find comparable property elsewhere for comparable prices.

Though the residential plaintiffs' losses will have negative impacts on their property values, defendants argue for a presumption that the ultimate effect of the rezoning will be to offset such impacts and to produce a net dollar increase in those plaintiffs' property values (at least in the case of residential plaintiffs who own the real estate where they live). Even so, a similar presumption does not necessarily follow with regard to the manufacturing plaintiffs. Any net increase in the manufacturing plaintiffs' property values would be based only on the market-perceived ability of those plaintiffs to obtain residential-use rezoning of their own properties through the cumbersome process of obtaining city council approval of yet another rezoning ordinance. Such a net increase would also depend on the assumption that the value added by rezoning the manufacturing plaintiffs' properties would outweigh the costs of a manufacturing shutdown and a conversion of the properties to new uses. If rezoning of such value could not be obtained, a net decrease rather than increase in the manufacturing plaintiffs' property value would follow.

In sum, the residential plaintiffs who own their real estate will suffer short-term losses even if their property might experience net dollar value increases, theoretically realizable in the future. The residential plaintiffs who are renters will suffer similar losses without any corresponding increase in realizable property values. The manufacturing plaintiffs will suffer at least short-term losses; those plaintiffs' net realizable property values would increase, if at all, only as the market perceived the necessary rezoning to be obtainable; otherwise, their property values would decrease. The Ludwig Drum property value will increase.

*c-d. Promotion of public welfare and gain-loss balance.* There is a demand in Chicago for the type of residential use allowed by the rezoning. The rezoning will make commercial use of a property where vacant structures have stood for some time. However, plaintiffs contend that the facts pleaded in their complaint show that the balance is against the public welfare. Defendants, who persistently contend that plaintiffs are merely pleading an increase in property values, reach an opposite conclusion. Though defendants' contention is simplistic, this question must await a trial for resolution.

*e-f. Suitability as zoned and length of time vacant.* On these points, the parties differ as to the proper application of *La Salle* factors that were articulated in connection with challenging a refusal to permit a nonconforming use. We need not yet decide how to apply the factors in the context of neighbors' challenge to a rezoning. However, in connection with the suitability factor, we note that in *Garner v. City of Carmi,* where a rezoning was challenged, the court examined whether the property was *more* suitable as rezoned than as formerly zoned. (28 Ill. 2d at 565, 192 N.E.2d at 819.) Here, we think that the amended complaint demonstrates the property's suitability both to its formerly zoned use and to its rezoned use.

*g-h. Existence of plan and conformity with plan.* Plaintiffs cite city, county, and State planning policies that favor industrial retention. They also point to many dying areas of Chicago that could meet any public need for housing of the type for which the rezoned property will be used.

Defendants respond that the City has no comprehensive zoning plan as such and that the Cook County policy of favoring industrial retention offers no guidance on how to zone specific parcels of real estate.

Plaintiffs further contend that the very lack of a comprehensive zoning plan weakens the presumption of validity that would normally attach to a rezoning ordinance. (See *Forestview,* 18 Ill. App. 3d at

243, 309 N.E.2d at 773; accord *Harris Trust & Savings Bank v. Duggan* (1982), 105 Ill. App. 3d 839, 849, 435 N.E.2d 130, 139, *aff'd* (1983), 95 Ill. 2d 516, 449 N.E.2d 69.) Defendants contend that *Forestview* did not signal a change in the standard of review that calls for presuming the constitutionality of a zoning ordinance. (See *First National Bank v. Village of Vernon Hills* (1977), 55 Ill. App. 3d 985, 989-90, 371 N.E.2d 659, 664.) However, *Vernon Hills* is distinguishable, because there the court's departure from *Forestview* was based on a village's status as newly developing, on the absence of any showing that the village had failed to consider relevant land use data, and on the fact that the village had begun comprehensive planning even though it had not yet formally adopted a plan. Meanwhile, *Harris Trust & Savings Bank v. Duggan* has reaffirmed *Forestview*'s rule that absence of a plan, even though not dispositive, does weaken the presumption of a zoning ordinance's validity.

*i. Need for development.* Plaintiffs contend that there is no need for luxury housing as permitted by the rezoning and that any need for work/live units can be met in other, dying industrial areas of the city.

Defendants respond that plaintiffs do not challenge the need for work/live units but only challenge the need for such units in their neighborhood. However, this response by defendants fails to address plaintiffs' denial of need for luxury housing. Moreover, because the *Sinclair* "need" factor refers to a need for *the proposed use*, it necessarily pertains to the proposed use at the proposed location, not to some similar use somewhere. Therefore, consideration of a need for the proposed use in plaintiffs' neighborhood is all that this *Sinclair* factor requires. Taking as true the facts pleaded in the amended complaint, there is clearly no neighborhood need for the development.

Thus, not only was it improper to dismiss plaintiffs' amended complaint at the pleading stage merely for perceived failure to meet *La Salle-Sinclair* criteria, but also it met a significant number of them and thereby stated a constitutional claim. The trial court erred insofar as dismissal of plaintiffs' complaint was based on failure to state a claim.

## 2. STANDING

Defendants contend that plaintiffs lack standing because they have failed to allege harm.

Defendants' contention of failure to allege harm is grounded largely on their repeated argument that plaintiffs are simply complaining about an increase in property values. However, as already discussed, plaintiffs' case is not that simple. Rather, plaintiffs are

complaining about an impending rise in taxes based on perceived value increases but unaccompanied by any ability on their part to take advantage of the perceived value increases. In addition, plaintiffs are complaining about a multitude of other harms, including destruction of job opportunities and of neighborhood social and commercial fabric.

Defendants call plaintiffs' allegations of harm speculative, but plaintiffs respond that any zoning case involves expert projections that an opponent will wish to term speculative. Plaintiffs correctly add that, at the pleading stage, they have not yet had a chance to prove what defendants contend is speculative.

In addition, defendants contend that specific allegations of harm to plaintiffs are insubstantial. Besides arguments already discussed, defendants attack two of plaintiffs' specific allegations of harm as follows.

Defendants say that the traffic increase and parking-space decrease of which plaintiffs complain would result from the same industrial use that plaintiffs advocate for the property. Defendants also say that the rezoning ordinance requires an increase in off-street parking spaces. However, plaintiffs point out that they expressly alleged traffic and parking problems *beyond* those that would result from light industrial or manufacturing use. Plaintiffs also point out that defendants' reference to the ordinance improperly contradicts factual allegations of the complaint and that, according to the complaint, the rezoning ordinance reduces the number of off-street parking spaces below what is required of similar developments by the Chicago Zoning Ordinance.

Defendants deny that the manufacturing plaintiffs' property will be subjected by the rezoning ordinance to the stricter noise, setback, height, and other regulations that plaintiffs allege will then apply under the Chicago Zoning Ordinance because of the nearness of a residential use. The reason, defendants say, is that section 10.5 of the Chicago Zoning Ordinance, which plaintiffs cited, uses the term "adjacent" in regard to nearby uses, and neither manufacturing plaintiff's property immediately adjoins the Ludwig Drum property. (Chicago Zoning Ordinance §10.5.) Plaintiffs reply that section 10.13—1 of the zoning ordinance (Chicago Zoning Ordinance §10.13—1), which the amended complaint also cited, uses the phrase "across a street from a Residence District" and that, because the manufacturing plaintiffs' property is across the street from the Ludwig Drum property, those plaintiffs' property will become subject to stricter regulations as a result of the rezoning.

Plaintiffs appear to assume, which we refrain from deciding, that each zoning ordinance reference to a "Residence District" includes a commercial-residential planned development (CRPD) such as the Ludwig Drum property. In addition, though plaintiffs do not mention it, section 10.5 of the zoning ordinance specifically provides that the "standards governing noise for the M1 Districts [plaintiffs] shall apply at the nearest Residence or Business District boundary line." Thus, by creating a boundary line for the Ludwig Drum CRPD that is closer to the manufacturing plaintiffs' property than is the boundary of any previously designated residence or business district, the rezoning ordinance may in yet another way limit those plaintiffs' property use more severely than before—again assuming that a CRPD can be considered a residence district.

■■ Even if the manufacturing plaintiffs err in assuming that legally the rezoning will subject their property to stricter zoning controls, they also contend that the rezoning will bring additional costs to defend against complaints (whether or not legally sound) brought by residential neighbors. This alone is a claim of injury sufficient to withstand a pretrial dismissal motion, though it may present problems of proof at trial.

Defendants contend that the plaintiffs who do not own real estate, but who may simply be month-to-month tenants or tenants at sufferance, lack standing because no court has recognized such "transient" interests as sufficient for a zoning challenge. Defendants contend further that those plaintiffs did not allege that any harm will actually occur before their tenancies end. Though defendants cite no cases in support of these points, the trial court agreed with them. By contrast, plaintiffs cite *Corkill Electric Co. v. City of Chicago* (1990), 196 Ill. App. 3d 838, 847, 554 N.E.2d 1027, 1032-33, as impliedly recognizing a nearby oral lessee's standing to seek *enforcement* of a zoning ordinance. As inferential support for plaintiffs, *Corkill* is persuasive and certainly outweighs defendants' complete lack of case authority on nonowners' standing.

■■ ■ Meanwhile, courts have previously recognized that, in zoning challenges, standing exists for such parties as lessees under written leases (*Tower Cabana Club, Inc. v. City of Chicago* (1955), 5 Ill. 2d 11, 123 N.E.2d 834), employees of a business (*Genusa v. City of Peoria* (7th Cir. 1980), 619 F.2d 1203 (standing under United States Constitution, article III)), prospective purchasers of property (*Sisters of Providence v. City of Evanston* (N.D. Ill. 1971), 335 F. Supp. 396 (standing under Federal law)), persons with a possessory interest in property (*Chicago Title & Trust Co. v. Village of Mount Prospect*

(1978), 63 Ill. App. 3d 223, 379 N.E.2d 901), and owners *or residents* of single-family houses (*Wheeling Trust & Savings Bank v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 539, 331 N.E.2d 172). We think the tenant plaintiffs have standing.

Defendants also cite law requiring that plaintiffs plead special harm not shared with the general public. Curiously, however, defendants never argue directly that plaintiffs are not harmed differently from the general public; rather, defendants argue that plaintiffs are not harmed at all. Meanwhile, plaintiffs extensively support their allegation of special harm. Because plaintiffs, all of whom occupy real estate near the rezoned property, allege at least some harm not experienced in common with the general public, defendants have failed to show that plaintiffs lack standing to sue.

Accordingly, to the extent that dismissal of plaintiffs' complaint was based on lack of standing, the trial court erred.

### B. COUNT II: ZONING ORDINANCE AMENDMENT CRITERIA

In count II of their amended complaint, plaintiffs alleged that the rezoning was arbitrary and capricious because the City failed to follow the criteria set forth in its own zoning ordinance for rezoning to permit planned developments such as the Ludwig Drum development. Chicago Zoning Ordinance §11.11—2.

Any failure by the City to follow its zoning ordinance in approving the rezoning ordinance is governed by *Landmarks Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 531 N.E.2d 9. The *Landmarks* court declined to invalidate a Chicago home-rule ordinance that had been passed in contravention of an earlier ordinance but not (so far as any plaintiff contended) in violation of any State or Federal statute or constitutional provision. *Landmarks*, 125 Ill. 2d at 179-80, 531 N.E.2d at 15-16.

Plaintiffs' only constitutional claim (set forth in count I) is that the rezoning ordinance arbitrarily and capriciously violates their substantive due process rights under the Illinois Constitution. This claim does not depend on whether the City followed its own criteria for passing rezoning ordinances; rather, it depends on the rezoning ordinance's substance. Since plaintiffs did not contend in count II that the city's mere failure to follow zoning ordinance criteria violated any applicable statute or their procedural due process, equal protection, or other constitutional rights, the trial court did not err in dismissing count II. *Cf. American National Bank & Trust Co. v. City of Chicago* (1990), 209 Ill. App. 3d 96, 109-10, 568 N.E.2d 25, 34 (rezoning plain-

tiff alleged denial of procedural due process through denial of fair notice and hearing).

### C. COUNT III: ECONOMIC DISCLOSURE AND NOTICE

In count III of their amended complaint, plaintiffs alleged that, during the rezoning process, defendants failed to disclose properly who the applicants for the rezoning were. See Chicago Zoning Ordinance §11.9—3.2.

Count III also alleged that the City prematurely published a notice of a meeting of the city council's committee on zoning because, according to plaintiffs, the meeting could not lawfully have been held until after the date fixed in the notice. See Chicago Zoning Ordinance §§11.9—4 through 11.9—6.

As with count II, the *Landmarks* rule governs plaintiffs' complaint in count III of the City's alleged failure to comply with its own ordinance requirement. Besides, plaintiffs did not allege a scheme to deprive them of notice as in *In re Petition of Kildeer* (1988), 124 Ill. 2d 533, 530 N.E.2d 491, which plaintiffs cite as requiring "meaningful" notice. Neither did plaintiffs allege having had no actual notice of the committee hearing.

The trial court did not err in dismissing count III.

### CONCLUSION

The trial court's judgment is affirmed as to counts II and III of the amended complaint. The judgment is reversed as to count I, and this cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

CERDA, P.J., and RIZZI, J., concur.