WESTWOOD FORUM, INC., *et al.*, Plaintiffs, v. THE CITY OF SPRING-FIELD *et al.*, Defendants-Appellees (The Village of Jerome, Plaintiff-Appellant; First National Bank of Springfield, as Trustee, Defendant).— WESTWOOD FORUM, INC., *et al.*, Plaintiffs-Appellants, v. THE CITY OF SPRINGFIELD *et al.,* Defendants-Appellees (The Village of Jerome, Plaintiff; First National Bank of Springfield, as Trustee, Defendant).

Fourth District    Nos. 4—93—0905, 4—93—0990 cons.

Argued April 12, 1994.—Opinion filed May 20, 1994.

Val C. Simhauser, of Simhauser Law Office, and William E. Feurer (argued), of William E. Feurer, Ltd., both of Springfield, for appellant Village of Jerome.

William E. Feurer (argued), of William E. Feurer, Ltd., of Springfield, for other appellants.

James K. Zerkle (argued) and Robert M. Rogers, Corporation Counsel, of Springfield, for appellee City of Springfield.

Stephen A. Tagge (argued), Michael A. Myers, and Thomas H. Wilson, all of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee Commercial Realty Partners, Ltd.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs in this case are 56 individual property owners and two neighborhood associations who filed a declaratory judgment action against defendants, the City of Springfield, Commercial Realty Partners, Ltd., and First National Bank of Springfield, as trustee of trust No. 1505, seeking to have Ordinance No. 92—089 (Springfield, Ill., Ordinance 92—089 (1992)) declared unconstitutional. As an alternative theory of recovery, the 56 individual property owners sought damages under a theory of inverse condemnation. The Village of Jerome (Village) filed a separate declaratory judgment action against the same defendants. The circuit court dismissed the two neighborhood associations as plaintiffs for lack of standing and dismissed the inverse condemnation count of the complaint for failing

to state a claim upon which relief could be granted. Summary judgment was then granted in favor of defendants and against the remaining plaintiffs on count III of the 56 individuals' second-amended complaint and the Village's second-amended complaint. We affirm.

The property which forms the basis for this declaratory judgment action consists of 93.6 acres of land located in southwest Springfield. The property is located north of the Jacksonville Branch Creek and west of Chatham Road. Brentwood subdivision, a development of single-family residences, is located to the immediate north of the property. Colony West subdivision lies to the west of the property and just beyond that subdivision is White Oaks Mall. The southern boundary of the property is the Jacksonville Branch Creek behind which is Sangamon Center, a commercial development consisting of a bank, grocery store, retail store, fast-food restaurants, and office buildings. Finally, the eastern boundary of the property consists of Chatham Road and due east of that road is the Village, containing single-family residences.

The 56 individual plaintiffs are property owners who own single-family residences in the Brentwood and Colony West Subdivisions. Westwood Forum, Inc. (Westwood), is a not-for-profit association formed to represent landowners and residents of Springfield who live in the area bounded by the Jacksonville Branch Creek on the south, Chatham Road on the east, Interlacken Drive on the west, and Brentwood Drive and Cambridge Drive on the north. Its corporate purposes include the promotion of the orderly, systematic and intelligent development of the entire area and the preservation of the quality of life in the area. The Council of Neighborhood Associations (Council) is a not-for-profit corporation whose members include approximately 18 neighborhood associations in Springfield as well as the individual members of these neighborhood associations. Its corporate purposes include the preservation, protection and enhancement of the character and quality of life in residential neighborhoods and the orderly, intelligent and systematic development of Springfield and the surrounding areas. Westwood is a member of the Council.

Prior to 1984, this property was zoned R-2, which allowed for single-family residential uses. At that time, the property was vacant. In 1984, the City of Springfield rezoned the property, retaining the R-2 classification along the north and west borders, which abut the Brentwood and Colony West subdivisions. The center portion of the property was zoned R-4(c), which permits multi-family residential uses (apartments) and community facilities such as auditoriums, libraries, museums, and radio and television stations. The southern

portion of the property was zoned R-5(b), which permits nonretail and business and office uses, including medical and dental offices, laboratories, funeral homes, travel agencies, hospitals and commercial day-care centers. Following the 1984 rezoning, Montvale Retirement Estates, a large retirement center, was built in the middle of the property.

The City of Springfield adopted its Comprehensive Plan 2010 on July 2, 1991. It, as did the 1962 and 1983 versions, proposed the completion of Iles Avenue through the property. Currently, Iles Avenue, an east-west street, runs through the Village and ends at Chatham Road on the eastern boundary of the property. It resumes at the western boundary of the property on the northern edge of White Oaks Mall. The Village's Comprehensive Plan, adopted in 1963, also contemplates the completion of Iles Avenue.

This property is owned by First National Bank, as trustee under trust No. 1505 (owner), and Commercial Realty Partners, Inc. (Commercial Realty), is the contract purchaser. In 1992, the owner and Commercial Realty, as a joint venture, filed a petition with the City of Springfield to rezone the property with the following classifications: B-1, highway business service district; S-2, community shopping and office district; R-5(b), general residential and office district; and R-3, single-family and duplex residential district. At the same time, the owner filed a petition to vacate its existing plat of subdivision, which called for light residential, and filed a petition for preliminary approval of a new subdivision plat, calling for the area to be commercial and more intensive residential. Both petitions were filed with the Springfield-Sangamon County Regional Planning Commission (Regional Planning Commission). On July 2, 1992, the Land Subdivision Committee of the Regional Planning Commission recommended against the owner's proposed subdivision, and on July 15, 1992, the Regional Planning Commission voted unanimously to deny the proposed new plat of subdivision.

The petition filed by the joint venture was referred to the Springfield Planning and Zoning Commission (Planning and Zoning Commission). The staff of the Planning and Zoning Commission recommended denial of the petition. This recommendation was based on the facts that (1) the rezoning was a complete departure from the City of Springfield's Comprehensive Plan; (2) the rezoning would have a detrimental impact on residential areas to the west, north and east; and (3) the rezoning would cause a net increase in traffic on Chatham Road and Wabash Avenue.

A public hearing was held on July 15, 1992, before the Planning and Zoning Commission. Thereafter, it unanimously voted to recom-

mend to the Springfield City Council (City Council) that the petition to rezone be denied. The Planning and Zoning Commission noted that the proposed rezoning was not in accordance with the Comprehensive Plan and the trend of the area was toward new single-family residential development to the west and commercial development to the south. The Planning and Zoning Commission also found the property to be suitable to the existing classification and found no evidence to support that a deviation from the Comprehensive Plan was appropriate.

On November 17, 1992, the City Council considered the plan submitted by the joint venture, which was in the form of a map of a subdivision called "Wanless' Montvale." By a vote of eight to three, the City Council adopted Ordinance No. 92—089, which modified the recommendation of the Planning and Zoning Commission. The existing R-2 classification along the northern and western boundaries of the property, which border the Brentwood and Colony West subdivisions, was retained. The central part of the property was rezoned to an R-5(b) classification and the southern and eastern portions of the property, next to the Sangamon Center and Chatham Road, were classified S-2. A limited amount of B-1 was assigned. This ordinance became effective on January 5, 1993.

On January 8, 1993, plaintiffs filed a complaint seeking a declaratory judgment asking that Ordinance No. 92—089 be held unconstitutional. In the alternative, the 56 individual plaintiffs sought damages on a theory of inverse condemnation. Subsequently, first- and second-amended complaints were filed by the 56 individual plaintiffs, Westwood and the Council, although the versions contained nearly identical allegations. The Village filed a separate second-amended complaint. Commercial Realty filed a motion for summary judgment on July 9, 1983, against all plaintiffs. In that motion, it alleged there were no genuine issues of material fact as to plaintiffs' claim that Ordinance No. 92—089 was arbitrary and capricious or otherwise invalid. The City of Springfield filed its motion for summary judgment on August 5, 1993, making the same allegations.

The circuit court granted summary judgment in favor of defendants as to count III of the 56 individual plaintiffs' complaint, granted summary judgment in favor of the Village's second-amended complaint, and dismissed Westwood and the Council as plaintiffs for lack of standing. The claim for inverse condemnation was dismissed for failure to state a claim upon which relief could be granted.

Specifically, the circuit court found the existing uses and zoning classifications of the neighboring property were mixed with both residential and commercial uses. The circuit court also found that prior

to the rezoning in 1984, which granted a special use variance to allow for the development of Montvale Retirement Estates, the then-existing zoning did not permit the property to be economically developed. By virtue of the property's location and proximity to mixed commercial and residential uses, as well as the existing and proposed road network near the property, the circuit court found the property was suitable for the purposes permitted by the new zoning granted by Ordinance No. 92—089. The circuit court concluded the zoning reclassification granted to the property by Ordinance No. 92—089 would not have an adverse effect upon the health, safety, morals and welfare of the general public.

In No. 4—93—0990, the 56 individual plaintiffs, Westwood and the Council, appeal, arguing the court erred in (1) granting summary judgment where there was a question of law and fact over whether Springfield Ordinance No. 92—089 was constitutional; (2) dismissing two neighborhood associations as plaintiffs for lack of standing; and (3) dismissing the alternative count by 56 individual plaintiffs for damages based on inverse condemnation. In No. 4—93—0905, the Village appeals the grant of summary judgment in favor of defendants.

■ We first consider the summary judgment issue argued by plaintiffs in No. 4—93—0990. Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) In reviewing the trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case to determine whether the trial court was correct. (*Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795, 601 N.E.2d 286, 289.) A trial court may properly enter summary judgment if the record presents only a question of law. *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6, 570 N.E.2d 315, 317.

At oral argument, a question arose as to whether this case was an appropriate one for summary judgment or whether it was of such type that necessarily involved factual disputes which must be resolved by a trier of fact. Defense counsel asserted that our decision in *Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 540 N.E.2d 895, had already established that this type of case was an appropriate one for summary judgment. In that case, the City of Springfield made the same argument put forth here by plaintiffs, namely, that the facts are not disputed or contradicted, but only

that, as to the factors for determining the reasonableness of the zoning ordinance, the trial court's decision is unsupported. We conclude, as we did in *Suhadolnik*, that no genuine issues of material fact remain and all the necessary facts are before this court. Accordingly, whether, under the facts of this case, the zoning ordinance as applied is unconstitutional is a question of law and the only issue before us is whether the trial court's determination was correct. *Suhadolnik*, 184 Ill. App. 3d at 164, 540 N.E.2d at 900.

Enacting a zoning ordinance is a legislative function, and once a legislative body has enacted legislation, there is a presumption that the enactment is a valid exercise of police power. (*Suhadolnik*, 184 Ill. App. 3d at 164-65, 540 N.E.2d at 900.) In order to overcome the presumption of validity of a city ordinance, it must be established by clear and convincing evidence that the ordinance as applied to the challenging party is arbitrary and unreasonable and has no substantial relation to the public health, safety, or welfare. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 66, 349 N.E.2d 399, 412.) Even though the validity of each zoning ordinance must be determined on its own facts and circumstances, an examination of numerous cases discloses that among the facts which may be taken into consideration in determining validity of an ordinance are the following: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owners; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area and vicinity of the subject property. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.

Two other factors that courts will consider are the need for the use proposed by the property owner and the care with which the community has undertaken its development planning. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, 167 N.E.2d 406, 411.) Since no one factor is controlling, they should be reviewed in the aggregate and not individually. (*Suhadolnik*, 184 Ill. App. 3d at 166, 540 N.E.2d at 901.) Although no one factor is determinative, a primary concern is whether the property in question is zoned in conformity with surrounding uses and whether those uses are uniform and established. *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309, 388 N.E.2d 388, 391.

The first factor to be considered is the use of the nearby property. The areas immediately to the north and the west of the property are the Brentwood and Colony West subdivisions. White Oaks Mall is directly west of Colony West and a major thoroughfare, Veterans Parkway, is located west of White Oaks Mall. Chatham Road, a major four-lane road, forms the eastern boundary of the property and the Village lies directly east of Chatham Road. The Jacksonville Branch Creek forms the southern boundary of the property. Directly south of the Jacksonville Branch Creek, bordering both Chatham Road and Wabash Avenue, a major east-west street, lies Sangamon Center, a large commercial development which contains a grocery store, retail store, day-care center, and bank, as well as various restaurants and office buildings. Thus, this area appears to be a mixture of residential and commercial uses.

The second factor set forth in *La Salle* is the extent to which property values are diminished by the particular zoning restrictions. The impact on property values is a valid concern when determining the validity of a zoning restriction, but it is not by itself sufficient to invalidate a zoning restriction. (*Racich v. County of Boone* (1993), 254 Ill. App. 3d 311, 315, 625 N.E.2d 1095, 1099.) Plaintiffs note the staff of the Regional Planning Commission found that the rezoning would be a complete departure from the Comprehensive Plan and would have a detrimental impact on residential areas to the west, north, and east of the property. Donald F. Edwards, a long-time appraiser, testified that he had never seen a case whereby the value of residential property was not hurt by being located near commercial property. Daniel L. Milligan, an estate attorney, gave the same opinion. One plaintiff described how his brother, who lived next door, had been hurt in attempting to sell his house because of the action of the City Council in adopting this ordinance.

The third and fourth factors to consider are the extent to which the diminution in value of plaintiffs' property promotes the health, safety, morals and general welfare of the public and the relative gain to the public as compared to the hardship imposed upon the individual property owners. The hardship imposed on plaintiffs is the decreased value of their property due to being located near a commercial development and the increased traffic from that development. However, a traffic study done by the Illinois Department of Transportation showed an increase in traffic in this area between 1985 and 1991. This diminution in value is to be balanced against the relative gain to the public and the extent to which the health, safety, morals or general welfare of the public is promoted. Except for the Montvale Retirement Estates, this property has been vacant since

1984. As we noted in *Suhadolnik*, it is hard to understand how a vacant piece of property promotes the health, safety, morals, or general welfare of the public. (*Suhadolnik*, 184 Ill. App. 3d at 177, 540 N.E.2d at 908.) The relative gain to the public includes the increase in available jobs, increased revenues from the commercial development and the increased shopping potential for the consumer.

The fifth factor to consider is the suitability for the zoned purposes. The Planning and Zoning Commission unanimously found that the property appeared to be suitable to the existing classification, *i.e.*, the single-family residence classification. However, this court should consider the suitability of the property for the purposes permitted by the new zoning rather than for its previous zoning. (See *Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, 1055, 458 N.E.2d 931, 941.) This property is currently bordered by two major thoroughfares, and will be bordered by three when Iles Avenue is completed, as well as being near other commercial developments. The location of the property on the southwest side is in a major area of growth in Springfield.

The sixth factor to consider is the length of time the property has been vacant. Prior to 1984, the property was vacant. However, in 1984, when the City Council granted some commercial zoning to the property, the Montvale Retirement Estates was built. Currently, that development is the only one on the property.

The last two factors to consider are the need for the use proposed by the owner and the care with which the community has undertaken its development planning. The Comprehensive Plan has always anticipated the completion of Iles Avenue through the property. Buffer zones have been created on the property adjacent to the Brentwood and Colony West subdivisions. This is consistent with the Comprehensive Plan. The need for the proposed use is that the southwest area of Springfield continues to rapidly expand and the property in issue is the last large undeveloped tract in the area bounded by two major roads. The zoning ordinance allows for the construction of new residential housing, including multifamily apartments to meet Springfield's growing population demand, while at the same time allowing for the addition of new retail and office uses to meet the needs of those residents.

Based on all the facts before the circuit court, after applying the appropriate factors, it is clear that the court properly granted summary judgment in favor of defendants. There are no genuine issues of material fact as to the validity of Ordinance No. 92—089.

■ Plaintiffs next allege that the City of Springfield applied its own procedural provisions in an unconstitutional manner. Specifi-

cally, plaintiffs note that the ordinance adopted by the City Council was based on a map of a proposed subdivision that did not exist at the time of the vote, and that the legal descriptions included in the ordinance did not exist and were prepared only after the passage of the ordinance. Plaintiffs further alleged that 10 different versions of the zoning proposal were provided to various aldermen in individual nonpublic meetings and only the tenth version was ever presented to the City Council at a public hearing. Plaintiffs suggest that the City Council adopted a zoning map containing 142 fictional lots and nonzoned fictional streets which bore no relationship to the original proposal and bore no relationship to the map which was included in the purported ordinance. Plaintiffs conclude that defendants have offered no evidence to contradict any of these allegations and that these actions constitute a pattern of unconstitutionally arbitrary activities by the City Council.

The City of Springfield is a home rule municipality which derives its zoning authority directly from its home rule authority under the Illinois Constitution of 1970. (Ill. Const. 1970, art. VII, § 6.) The City Council adopted the zoning code of the City of Springfield, which sets forth specific procedures to be followed in amending the existing zoning classifications of property within the City of Springfield. These procedures require the filing of an application with the Office of the Zoning Administrator, a public hearing by the Springfield Planning and Zoning Commission after proper public notice of the hearing, and a recommendation to the City Council by the Commission. The City Council may affirm, reject or modify the recommendation of the Commission. (Springfield, Ill., Zoning Code title 15, §§ 155.220 through 155.227 (1990).) It is undisputed that plaintiffs appeared before the Commission to object to the zoning amendment and all the proper procedures of the zoning code were followed. As defendants note, plaintiffs' only complaint is that the City Council modified the Commission's recommendation of rejection and granted some of the requested zoning amendments. In Illinois, zoning is considered a legislative function of home rule municipalities (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632) and the City Council here exercised its legislative function. The City Council balanced the interests of all concerned parties by its modification of defendants' proposal and thus plaintiffs cannot complain they were denied any due process.

In No. 4—93—0905, the Village appeals from the granting of summary judgment against it. It contends the circuit court erred in entering summary judgment in favor of defendants as there are genuine issues of material fact raised in the pleadings and affidavits.

Summary judgment was properly entered against the Village. Without repeating our previous discussion, it is sufficient to state that the evidence before the circuit court established that Ordinance No. 92—089 is valid as applied against the Village.

■ In No. 4—93—0990, plaintiffs next contend the circuit court erred in dismissing Westwood and the Council for lack of standing. Plaintiffs suggest this case is vastly different than that presumably relied upon by the trial court, *Landmarks Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 531 N.E.2d 9. Plaintiffs also assert there are important policy reasons why neighborhood associations should be able to speak for their members.

To have standing, plaintiffs seeking declaratory relief must present an actual controversy between adverse parties, as to which controversy the plaintiff is not merely curious or concerned about the outcome, but possesses some personal claim, status or right, a distinct and palpable injury to which is fairly traceable to the defendant's conduct and substantially likely to be prevented or redressed by the grant of such relief. (*Kluk v. Lang* (1988), 125 Ill. 2d 306, 314, 531 N.E.2d 790, 793; *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 493, 524 N.E.2d 561, 575.) The purpose of the standing requirement is to assure sufficient sharpness in defining the issues so that the court may be aided in deciding the case; it is meant to preclude uninterested persons from suing but is not meant to preclude a valid controversy from being litigated. (*Kluk,* 125 Ill. 2d at 315, 531 N.E.2d at 794.) The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another. *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 376, 362 N.E.2d 298, 301.

Standing requires some injury in fact to a legally recognized interest and a prospective party cannot gain standing merely through a self-proclaimed concern about an issue, no matter how sincere. (*Landmarks,* 125 Ill. 2d at 175, 531 N.E.2d at 13.) Aesthetic interests, while not to be disregarded, are not controlling on the question of standing. (See *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 449 N.E.2d 69.) An association's representational capacity alone is not enough to give it standing, absent a showing that it has a recognizable interest in the dispute, peculiar to itself and capable of being affected. *Underground,* 66 Ill. 2d at 376, 362 N.E.2d at 301; see also *Retail Liquor Dealers Protective Association v. Fleck* (1950), 341 Ill. App. 283, 93 N.E.2d 443, *aff'd in relevant part* (1951), 408 Ill. 219, 96 N.E.2d 556.

The application of these cases illustrates that the circuit court was correct in holding Westwood and the Council did not have

standing. They contend they had standing because their individual members are owners of land adjacent to the property to be rezoned and whose property values will be diminished because of the rezoning. However, as noted in *Landmarks* and *Underground,* an association does not have standing based on its representational capacity alone. The association must have a recognizable interest in the dispute which is peculiar to itself and capable of being affected. Westwood and the Council have not alleged any direct injury to themselves capable of being affected. They do not own any property and are not in the business of owning or selling property. Any self-proclaimed concern about the rezoning or aesthetic interest in keeping the area primarily residential is also insufficient to confer standing upon these associations.

■ Finally, in No. 4—93—0990, the 56 individual plaintiffs contend the circuit court erred in dismissing the count of their second-amended complaint seeking an alternative remedy for damages based on a theory of inverse condemnation. The entire argument raised by these plaintiffs is that some government takings are only partial in nature, and a regulation which diminishes a property's value may be a "taking" if it does not substantially advance a legitimate State interest that would otherwise be harmed by the owner's use of the land. They conclude, without further argument or citation to authority, that there is no legitimate State interest here, or if there is, they have done nothing to harm that interest.

The City of Springfield alleges this count of the second-amended complaint is both procedurally and substantively defective. The City of Springfield contends the count violates sections 2—603(b) and 2—613 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—603(b), 2—613) because it seeks to join in a single count a claim for just compensation of at least 56 individuals owning several separate unidentified tracts of real estate. It also contends the count is substantively defective because it fails to allege these plaintiffs have been deprived of *all* the use of their property. The City of Springfield notes that these plaintiffs admit they are residential landowners, and since they are using the property for that purpose, they have not been denied all the use of the land by the ordinance.

Inverse condemnation, as distinguished from eminent domain, describes the manner in which a landowner recovers just compensation for taking of property when condemnation proceedings have not been instituted. A land use regulation, however, does not constitute a taking if it substantially advances a legitimate State interest and does not deny an owner economically viable use of its land. (*Tim*

*Thompson, Inc. v. Village of Hinsdale* (1993), 247 Ill. App. 3d 863, 884, 617 N.E.2d 1227, 1242.) In *Suhadolnik*, this court held, relying on *First English Evangelical Lutheran Church v. County of Los Angeles* (1987), 482 U.S. 304, 96 L. Ed. 2d 250, 107 S. Ct. 2378, and *MacDonald, Sommer & Frates v. County of Yolo* (1986), 477 U.S. 340, 91 L. Ed. 2d 285, 106 S. Ct. 2561, that a plaintiff failed to state a cause of action premised upon the regulatory taking theory where the plaintiff did not allege that he was deprived of *all* use of his property. *Suhadolnik*, 184 Ill. App. 3d at 180-81, 540 N.E.2d at 910; but see *Tim Thompson*, 247 Ill. App. 3d at 885, 617 N.E.2d at 1243 (wherein that court disagreed with this court's analysis in *Suhadolnik*).

The circuit court correctly dismissed the count of the complaint which attempted to allege a cause of action for inverse condemnation. These plaintiffs alleged an improper taking of their property, through an alleged reduction in their property values, by the City Council's adoption of Ordinance No. 92—089. These plaintiffs have not alleged or shown that they have been deprived of *any* use of their property, let alone *all* use of the property as required by *Suhadolnik*. Their property is zoned, and is being used, for single-family residences and there is no indication that they can no longer use the property for that purpose.

In conclusion, we affirm the judgment of the circuit court of Sangamon County. Specifically, we find Ordinance No. 92—089 is not arbitrary or unreasonable and has a substantial relation to the public health, safety or welfare. Westwood and the Council lacked standing to maintain a cause of action and plaintiffs failed to state a cause of action for inverse condemnation.

Affirmed.

GREEN and STEIGMANN, JJ., concur.