NO. 4-97-0047

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

HEINZ BOSSMAN, MARIE BOSSMAN, JAMES ) Appeal from

HIBBETT, BEVERLY HIBBETT, PETER RAPACZ, ) Circuit Court of

SHARON RAPACZ, W. THOMAS SANTARELLI,    ) Sangamon County

and SHIRLEY SANTARELLI, ) No. 96MR0002

Plaintiffs-Appellants, )

v. )

THE VILLAGE OF RIVERTON, GEORGEANA, )

LYONS, CHARLES R. BURRIS, and CAROL J. )

BURRIS, Trustees of the Charles R. )

Burris and Carol J. Burris Revocable ) 

Living Trust Dated October 1, 1993, ) 

Defendants-Appellees, )

and ) Honorable

CASEY'S GENERAL STORES, INC., ) Donald M. Cadagin,

Defendant-Intervenor. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Plaintiffs sought a declaratory judgment that an ordinance rezoning neighboring proper­ty was uncon­stitu­tional.  The trial court, in a one-sentence order, entered summary judg­ment for defen­dants.  Plaintiffs appeal.  We hold, based on the clear and convincing evidence contained in the record, that the rezoning was spot zoning.  We re­verse and remand with directions for the trial court to enter summary judgment in favor of plain­tiffs. 

The Village of Riverton (Village) is a community of 2,700 per­sons, located about 10 miles east of Springfield.  At the south­west corner of Lincoln Avenue and Seventh Street in Riverton, in an area zoned R-1 (residential), the Charles R. Burris and Carol J. Burris Revocable Living Trust dated October 1, 1993 (Burris Trust), owned a portion of a resi­den­tial lot, with a front­age on Seventh Street of 50 feet.  The rest of the Burris Trust lot had been taken for Lincoln Avenue, which at one time was State Route 36.  Immediate­ly south of the Burris Trust lot, Georgeana Lyons owned a lot improved with a single-family home.  Defen­dant-intervenor, Casey's General Stores, Inc. (Casey's), pur­chased the Burris Trust and Lyons proper­ties, then filed a petition with the village board of trust­ees (Board), seeking reclassi­fi­cation of the properties from R-1 to C-1 (commercial).  On Decem­ber 4, 1995, the Board enacted ordi­nance 95-30, reclassi­fy­ing the properties C-1.  

Three of the plaintiff families (Bossman, Rapacz and Santarelli) own resi­den­tial proper­ties on the corners of Lincoln and Seventh; the other (Hibbett) owns a residential proper­ty that adjoins the Burris Trust and Lyons properties on the west.  The Village was named a defendant in the declaratory judgment action, as were Lyons and the Burris Trust.  Casey's was allowed to intervene as a defen­dant.  

To the north of the Burris Trust and Lyons properties, on Seventh Street, there is residential zoning for approximately three blocks (700 feet), at which point the C-1 zoning for Riverton's down­town commercial district begins.  To the east of the proper­ties, on Lincoln Avenue, there is residential zoning for approxi­mately three blocks (960 feet), at which point C-1 zoning begins for a commer­cial dis­trict around Lincoln Avenue's inter­section with the interstate highway.  To the south of the proper­ties, on Seventh Street, there is residential zoning for a similar dis­tance, after which there is agricultural zoning to the Village limits.  All the proper­ty west of the proper­ties to the Village limits (ap­proxi­mately 2,240 feet) is zoned residen­tial.  The block on which the proper­ties are located is residen­tial, as are the adjacent blocks in all direc­tions (there is only one long block to the south, with only one cross street before the agri­cultural zon­ing).  

Casey's argued the integrity of the R-1 zoning had been destroyed before it entered the picture.  The Inter­ur­ban Restau­rant is located across Seventh Street in the second block north of the Burris Trust and Lyons properties, in a building whose commer­cial use predated the adoption of the Village zoning ordinance in 1968.  Across Seventh Street from the restaurant is an elemen­ta­ry school and church.  The Village water plant (de­scribed in the Village's brief as "an industrial eye­sore") is located across Seventh Street, south of the Burris Trust and Lyons proper­ties.  The land to the south of the properties is pretty much vacant.  There is a Knights of Columbus Hall, a permitted special use, four blocks south­west of the Burris Trust and Lyons proper­ties, on the west side of Third Street.  There is a church west of the proper­ties, on the north side of Lincoln Avenue, about 1¼ blocks from Seventh Street.  Casey's also com­plained the local newspa­per was operat­ed out of a resi­dence on Sixth Street (tele­phoning and typing for a weekly paper, printing done else­where), a dog groom­ing busi­ness was operated out of another resi­dence on Sixth Street, and there was a commer­cial sign on the Bossman property across Seventh Street from the Burris Trust and Lyons properties (which plaintiffs de­scribed as "a small aged, weath­ered sign tacked to the Bossman's back yard wood privacy fence advertising the Bossman's furniture store in Springfield").  Lincoln and Seventh is the busiest intersection in town, but plain­tiffs respond that this is a town of only 2,700 people.     

Concern has been expressed over some types of local govern­mental action in zoning cases:

"It is not a part of the legislative 

func­tion to grant permits, make special ex-

cep­tions, or decide partic­ular cases.  Such 

activi­ties are not legis­lative but adminis-

tra­tive, quasijudicial, or judicial in charac­ter.

To place them in the hands of legisla­tive bodies, 

whose acts as such are not judi­cial­ly review­-

able, is to open the door com­plete­ly to arbi­trary govern­ment.  I need not dwell at length on the 

obvious opportuni­ty this affords for special pri-

vi­lege, for the granting of favors to politi­cal 

friends or finan­cial bene­factors, for the 

with­hold­ing of permits from those not in the 

good graces of the authorities, and so on.  

The rule is famil­iar enough that courts may 

not inquire into the motives or reasons on 

which the legisla­tive body acted.  [Cita­tion.]  
  

It is because of this immunity from 

review that legislative bodies must confine 

them­selves to the prescrib­ing of general rules.  

If they may under­take to confer upon them­-

selves author­ity to decide what in fact 

amount to individual or particu­lar cases, the 

founda­tions of our legal system will fast 

disap­pear."  
Ward v. Village of Skokie
, 26 

Ill. 2d 415, 424, 186 N.E.2d 529, 533 (1962) 

(Klingbiel, J., specially concur­ring).  

See also 
Kotrich v. County of DuPage
, 19 Ill. 2d 181, 189-90, 166 N.E.2d 601, 606 (1960) (House, C.J., dissent­ing).  In 1967, the Illinois Municipal Code (Ill. Rev. Stat. 1967, ch. 24, par. 11-13-1 
et
 
seq
.) was amended (1967 Ill. Laws 3335 (§11-13-1 
et
 
seq
.)) to incor­po­rate the views ex­pressed in that special concur­rence 
and dis­sent.  
Geneva Resi­dential Ass'n, Ltd. v. City of Geneva
, 77 Ill. App. 3d 744, 754, 397 N.E.2d 849, 856 (1979).

Sections 11-13-1.1 and 11-13-5 of the Illinois Munici­pal Code (Municipal Code) re­quire that vari­anc­es and special use permits be granted only in accor­dance with estab­lished standards (65 ILCS 5/11-13-1.1, 11-13-5 (West 1994)), after a public hearing and findings of fact (65 ILCS 5/11-13-1.1, 11-13-5, 11-13-11 (West 1994)).  In municipali­ties over 500,000, the decision must be made by the zoning board of ap­peals, the corporate author­ities may not overrule that decision, and an appeal lies under the Adminis­trative Review Law.  65 ILCS 5/11-13-4, 11-13-13 (West 1994).  Munici­palities under 500,000 may utilize that same approach or may reserve the ultimate decision on variances and special use permits to themselves.  65 ILCS 5/11-13-5, 11-13-11 (West 1994).  Any result that may be obtained through a vari­ance or a special use permit may also be obtained through an amendment to the zoning ordinance, but the Municipal Code does not attempt to regulate zoning amendments, except to require a hearing and to require that in some cases amendments must be approved by a two-thirds vote of the aldermen holding office.  65 ILCS 5/11-13-14 (West 1994).  The only real limita­tion on zoning amendments is the inquiry whether they may consti­tute spot zoning.   

The case of 
La Salle National Bank v. City of Evanston
, 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632 (1974), is often cited:

"Before a court will intervene it must be 

established by clear and convincing evidence 

that the ordinance, as applied to plaintiffs, 

is arbitrary and unreasonable and has no 

substan­tial rela­tion to the public health, 

safety or welfare.  These rules are based 

upon a recogni­tion that zoning is primari­ly 

a legisla­tive function, subject to court 

review only for the purpose of deter­mining 

whether the power, as exer­cised, in­volves an 

undue inva­sion of private constitu­tional 

rights without a reason­able justi­fica­tion in 

relation to the public welfare.  [Cita­tions.]  

Where it appears, from all the facts, that 

room exists for a differ­ence of opinion con-

cern­ing the reason­ableness of a classi­fica­tion, 

the legisla­tive judgment must be conclu­sive.   [Cita­tion.]  In [
La Salle National Bank]

v. [County of Cook
], 
12 Ill. 2d 40, [46-47, 

145 N.E.2d 65, 69 (1957),] we re­viewed the con-

sider­ations determin­ing the validity of an 

ordi­nance as applied to a particu­lar proper­ty 

and stated that 'among the facts which may be 

taken into consid­er­ation in determining the 

validi­ty of an ordi­nance are the follow­ing:  

(1) The existing uses and zoning of nearby 

property, [citing cases], (2) the extent to 

which property values are diminished by the 

particu­lar zoning restric­tions, [citing cases], 

(3) the extent to which the destruc­tion of 

property values of plaintiff promotes the 

health, safety, morals or general welfare of 

the public, [citing cases], (4) the relative 

gain to the public as compared to the hard­ship 

imposed upon the individ­u­al proper­ty owner, 

[citing cases], (5) the suitabil­ity of the 

subject proper­ty for the zoned purpos­es 

[citing cases], and (6) the length of time 

the property has been vacant as zoned con-

sid­ered in the context of land devel­opment 

in the area in the vicinity of the subject 

proper­ty. [Citing cases.]'"  

It is important to note that in 
Evanston
 the munici­pal­ity 
rejected
 the property owner's attempt to rezone the proper­ty, and the supreme court affirmed the municipality's decision to stand behind its zoning ordinance.  
Evanston
 is not author­ity for the proposition that a court should give defer­ence to a municipality's decision when it 
grants
 a property owner's request for special treatment and engages in spot zoning.  See 
Rodriguez v. Henderson
, 217 Ill. App. 3d 1024, 1030, 578 N.E.2d 57, 61 (1991).  The Village cites 
County of Cook
 
for the defer­ence that should be given the legis­lative body.  Inter­esting­ly enough, the court in that case 
found that the ordi­nance before it (the original ordinance) was arbi­trary and void, and stated that a differ­ence of opinion between the oppos­ing expert witness­es did not require a finding that the reason­able­ness of the ordinance was debatable.  
County of Cook
, 12 Ill. 2d at 47, 145 N.E.2d at 69.  

"Spot zoning" is a change in zoning applied only to a small area, which is out of harmony with comprehensive planning for the good of the community; zoning that would violate a zoning pattern that is homogeneous, compact and uniform.  
Chicago Title & Trust Co. v. Village of Skokie
, 
60 Ill. App. 3d 221, 235, 376 N.E.2d 313, 324 (1978).  This does not mean that every reclassi­fication of a single tract is void 
ipso
 
facto
; rather, it must be determined whether such change is in harmony with a comprehensive plan for orderly utilization of property in the locality.  The size of the rezoned tract or area is merely one factor to consid­er.  
Fifteen Fifty North State Building Corp. v. City of Chicago
, 15 Ill. 2d 408, 418, 155 N.E.2d 97, 102 (1958) ("it is true that incon­sistent zoning of small parcels is not to be encouraged").  Sometimes the original zoning ordinance has made a mistake with regard to a single tract.  Bringing that tract into harmony with the surrounding property is not spot zoning, or said another way, is not illegal spot zoning.  Howev­er, the power to zone or rezone cannot be exer­cised to satisfy the individual desires of a few.  
Cosmo­poli­tan National Bank v. City of Chicago
, 27 Ill. 2d 578, 584-85, 190 N.E.2d 352, 356 (1963) (amenda­tory ordi­nance void where no change in general character or existing uses in neigh­borhood).  

It would be diffi­cult to find spot zoning in an area where conflicting uses were haphazard­ly mixed.  Such mixing may exist either because little thought was given to the estab­lish­ment of the districts or because other uses over time have been allowed to invade the districts.  Nevertheless, the exis­tence of a formal comprehen­sive plan is not essential to a finding of spot zoning.  What is important is that the community in question has given care and consider­ation to the use and development of the land within its bound­aries.  
First National Bank v. Village of Vernon Hills
, 55 Ill. App. 3d 985, 990, 371 N.E.2d 659, 664 (1977).  Of para­mount importance is whether the subject property is zoned in conformity with sur­rounding existing uses and whether those uses are uniform and established.  
Truchon v. City of Streator
, 70 Ill. App. 3d 89, 93, 388 N.E.2d 249, 252 (1979).  The exis­tence of a comprehensive plan may justify what would other­wise be spot zoning.  If the Village here had a compre­hen­sive plan that looked to the con­struction of a conve­nience store and gas station in the area of Lincoln and South Seventh Street, this rezoning may not have been spot zoning.  However, there clearly was no such plan and the actual zoning pattern in the area was uniformly residen­tial.  

A number of early cases are often cited for the state­ment that in deter­mining the validity of an amenda­to­ry or revised ordinance, the factors to be considered are the same as those involved in ascertaining the legality of the initial ordinance.  
Garner v. City of Carmi
, 28 Ill. 2d 560, 564, 192 N.E.2d 816, 818-19 (1963) (amendatory ordinance found invalid); 
Exchange National Bank v. County of Cook
, 
25 Ill. 2d 434, 441, 185 N.E.2d 250, 254 (1962) (refusal to amend ordinance sustained).  That statement seems to have originated in 
Trust Co. v. City of Chica­go
, 408 Ill. 91, 100, 96 N.E.2d 499, 504 (1951), where the court was making the point that amendments to a zoning ordi­nance could be struck down just like the original zoning ordi­nance itself, that the repeal of an ordinance is not immune from consti­tu­tional attack.  (It has been argued that after property owners have relied on the original ordinance it cannot be changed.)  The amenda­to­ry ordi­nance in 
Trust Co.
 was in fact found to be arbi­trary and unrea­son­able.  The infer­ence cannot be drawn from these cases that spot zoning stands on equal footing with other zoning.  "An amendatory zoning ordinance cannot be sus­tained if the evidence fails to show that it was passed for the public good, but instead tends to show that it was passed in deference to the wishes of certain individuals."  
Trust Co.
, 408 Ill. at 100-01, 96 N.E.2d at 504-05.            

Casey's argues its project will bring addi­tion­al jobs, additional tax revenue, and competition to Riverton, citing 
Westwood Forum, Inc. v. City of Springfield
, 261 Ill. App. 3d 911, 918-19, 634 N.E.2d 1154, 1160 (1994).  One of the justifica­tions for a zoning ordinance is that it "promotes the health, safety, morals or general welfare
 of the public."  
Coun­ty of Cook
, 12 Ill. 2d at 47, 145 N.E.2d at 69.  A munici­pali­ty that re­quires additional housing for its resi­dents, for exam­ple, may zone single-family areas for multifamily use.  
Trust Co.
, 408 Ill. at 101-02, 96 N.E.2d at 505.  Public water­works, fire stations, hospitals and the like may have a substan­tial relation­ship to the public welfare.  See 83 Am. Jur. 2d 
Zoning & Planning
 §§78, 79, 149, 150 (1992).  A munici­pality may change its ordi­nance to include uses not origi­nally provided.  
Oak Forest Mobile Home Park, Inc. v. City of Oak Forest
, 
27 Ill. App. 3d 303, 320-21, 326 N.E.2d 473, 486-87 (1975) (mobile home park).  The present case is not an exclusionary zoning case, however.  There is another gas station and another grocery store in Riverton, and there are C-1 areas within a reasonable distance of Lincoln and South Seventh Street.  The problem here is not a lack of C-1 areas; the problem is that the particu­lar property where Casey's wants to be located is zoned R-1.  

Casey's argues that the Village may abandon its zoning ordinance whenev­er it sees any benefit in doing so.  That argu­ment is mistaken.  Not every perceived benefit will justify rezoning, only those bene­fits that consti­tute legitimate objec­tives of zoning.  See 83 Am. Jur. 2d 
Zoning & Planning
 §70 through
 
§127 (1992).  The argu­ment that rezon­ing would increase the tax base, as opposed to conserv­ing the tax base, has been reject­ed.  "[S]uch a justi­fi­cation is totally illuso­ry and totally viola­tive of all the basic princi­ples of zoning."  
Con­cerned Citizens for McHenry, Inc. v. City of McHenry
, 76 Ill. App. 3d 798, 806, 395 N.E.2d 944, 950 (1979); see also 
La Salle National Trust, N.A. v. Village of Westmont
, 264 Ill. App. 3d 43, 58, 636 N.E.2d 1157, 1166 (1994); 83 Am. Jur. 2d 
Zoning & Plan­ning
 §83 (1992).  

One of the considerations in a rezoning case is whether the property will be more valuable with the rezoning.  That consideration has been downplayed, however, since in­creased value exists in virtu­al­ly all reclassification cases.  
Suhadolnik v. City of Springfield
, 184 Ill. App. 3d 155, 176, 540 N.E.2d 895, 907 (1989); 
Evanston
, 57 Ill. 2d at 429-30, 312 N.E.2d at 633.  That is why the owner seeks reclas­si­fication--in order to in­crease the value of his property.  Casey's varies the argument somewhat in this case.  Casey's does not argue the in­creased value to itself, but at­tempts to focus on the correspond­ing value to the communi­ty.  Every new busi­ness will bring some addi­tional jobs, addi­tion­al tax reve­nue, and competition.  Again, that should not be disposi­tive, since it is true in virtu­al­ly all reclas­sifica­tion cases.     

The control or restriction of competition is not a proper or lawful zoning objective.  
Cosmo­politan National Bank v. Village of Niles
, 118 Ill. App. 3d 87, 91, 454 N.E.2d 703, 705 (1983).  Many zoning decisions have some indirect effect on competition, but it is improper to directly legislate economic protection for one business "against the normal competi­tive factors which are basic to our economic system."  
Exchange National Bank v. Village of Skokie
, 86 Ill. App. 2d 12, 21, 229 N.E.2d 552, 556 (1967); see also 83 Am. Jur. 2d 
Zoning & Plan­ning
 §81 (1992).  Encouragement of one competitor amounts to discour­agement of others.  Compe­ti­tion should be managed by market forces, not by local govern­ment, which should not be placed in the posi­tion of deciding whether more (or less) compe­tition is a good thing.  If the rezon­ing here is allowed to stand, the Village will have given Casey's competi­tive advan­tages that the exist­ing gas station does not have.  The existing gas station is required to operate out of a C-1 area.  Casey's would have a monopoly at the Burris Trust and Lyons location, as no other gas station could locate near it because of the surrounding R-1 zoning.           

Defendants' primary argument is that plain­tiffs have conced­ed the ultimate issue in this case:  whether there is room for a "legit­imate difference of opinion" or whether such "ques­tion of reasonable­ness is fairly debatable."  Plaintiffs' expert, Chuck Kirchner, a land-use planner, testified the zoning in the area is homoge­neous, compact and uniform, and that the character of the neigh­borhood is resi­den­tial.  He testified the action of the Village was arbitrary and constituted spot zoning.  On cross-examination, Kirchner was asked how a community that lacked a compre­hen­sive plan could ever make a rational decision in a zoning case, and he responded that they would have to listen to each side of the case.  Kirchner was asked if the result here was irrational, and he responded "I don't know if it was irratio­nal, it was incor­rect."  Elsewhere Kirchner was asked if there were arguments in favor of Casey's, and he replied there were no favor­able 
zoning
 arguments.  Fairly read, Kirchner's remarks indi­cat­ed there were argu­ments that Casey's would be a desirable addi­tion to Riverton, if it were properly located, but those argu­ments should not be consid­ered in making a rezon­ing decision.  Kirchner also made the statement, "there was an honest difference of opinion as to whether this was suitable or not."  Assuming Kirchner was refer­ring to the views of the Board, and not simply the public at large, it is clear he was suggesting that the Board honest­ly went outside the factors it could legitimately consider in order to do what it thought best.  We disagree that Kirchner conced­ed the primary issue in this case.

Plaintiffs presented the testimony of Ronald Ladley, a realtor, that the Casey's project would devalue the Santarelli property by 10% to 20% and would also devalue the proper­ty of the other plaintiffs.  On cross-examination Ladley was asked this question:

"Q.  Because of all the factors you 

mentioned or agreed with about the benefit 

to the community--the sales tax, the property 

tax, the conve­nience of shopping, the jobs--you 

would agree that this issue of rezoning--on 

the issue of rezon­ing, there is room for a 

honest difference of opinion, would you not?

A. Sure." 

Plaintiffs also called a real estate appraiser, Edward H. Hofferkamp, who testified the impact of the Casey's store on neighborhood property values could be substantial, extending even beyond the four corners of the intersection.  Hofferkamp on cross-examination was asked about the general benefits to the community and responded that "the impact on the sur­round­ing proper­ties, the negative impact outweighs the posi­tive in this loca­tion."  Hofferkamp was then asked:

"Q.  But there is room for a fair debate 

on this subject?  

A.  I guess that is why we're all here.  

Q.  So you would agree with that?  

A.  Yes."

When their testimony is viewed in its entirety, plaintiffs' experts did not concede the primary issue in this case.  We reject the argument we should decide this case on the basis of a few out-of-context statements and ignore the overall testi­mony of plaintiffs' expert wit­ness­es.  

In 
Westwood Forum
, we upheld a rezoning ordinance, but that case did not involve spot zoning.  The rezoned area in that case was not a single tract, but a 93.6-acre tract, and the rezoning was consistent with the comprehensive plan.  
Westwood Forum
, 261 Ill. App. 3d at 913, 919, 634 N.E.2d at 1156, 1160.  In 
Truchon
, the appellate court reversed a finding of spot zoning, but there was significant evidence in that case that the rezoning from residential to commercial was in confor­mi­ty with the charac­ter of the neighbor­hood and existing uses and zoning of nearby property.  
Truchon
, 70 Ill. App. 3d at 93, 388 N.E.2d at 252.  There is no such evidence in the present case.  There was also a finding of estoppel in 
Truchon
, where the plaintiffs waited seven months after enactment of the ordinance to file their suit, during which time defendant spent significant sums in reliance on the rezoning.  
Truchon
, 70 Ill. App. 3d at 94, 388 N.E.2d at 252-53.   The present case is most like 
Con­cerned Citi­zens
, where the appellate court found a rezoning of undevel­oped land from R-3 single family to B-1 commercial retail dis­trict consti­tuted spot zoning.  Although the area was not totally and uni­formly residen­tial, the existing variations were held not to alter the essen­tially residential character of the property.  
Concerned Citi­zens
, 
76 Ill. App. 3d at 805, 395 N.E.2d at 949.  The property owner also knew at the time he bought the property that it was restricted to residential use.  
Concerned Citi­zens
, 
76 Ill. App. 3d at 805, 395 N.E.2d at 949. 

Defendants' argument that the surrounding uses are not uniform is without merit.  Schools, churches, and home occupa­tions are gener­al­ly permit­ted in residential areas.  83 Am. Jur. 2d 
Zoning & Planning
 §220 (1992).  The Village itself argues that the surrounding uses are not uniform ("the surrounding 
uses
 are indubitably commercial--a newspaper operation, a dog grooming business, and a commercial sign" (emphasis in original)).  If the Village truly be­lieves that, it might consider rezon­ing the entire area, instead of requiring everyone except Casey's to abide by R-1 zoning.  See also 
Central Transport, Inc. v. Village of Hillside
, 210 Ill. App. 3d 499, 515, 568 N.E.2d 1359, 1369 (1991) (a municipality is estopped from claim­ing that its own ordinances are invalid).  Although the existence of a sub­stantial number of nonconforming uses (uses predating the ordi­nance) may be de­struc­tive of the homogeneity of a residential area, the testimo­ny in this case disclosed only one nonconforming use, the Inter­urban Restau­rant, more than a block away from the Burris Trust and Lyons proper­ties.  The existence of nonconforming uses gener­al­ly cannot be used to justify a rezoning of a single tract.  
Littlejohn v. City of North Chicago
, 259 Ill. App. 3d 713, 720-21, 631 N.E.2d 358, 364 (1994) (goal is to eliminate nonconform­ing uses, not to expand them). 

The evidence is overwhelming in this case that the existing uses and zoning of nearby property is residential, that plaintiffs' property will be reduced in value by this rezoning, and that the Burris Trust and Lyons properties are suitable and being used for resi­dential purposes.  See 
Evanston
, 57 Ill. 2d at 429-30, 312 N.E.2d at 633.  It is true the Burris Trust proper­ty has been vacant for some time, but it appears that vacancy is due to its small size, the fact that a portion of the lot was taken for Lincoln Avenue.  The Burris Trust lot is not suitable for any use by itself, but only in conjunction with the adjoining Lyons lot.  For the fact of vacancy to be significant there must be proof that improper zoning caused the vacancy, not that the property remained vacant merely because no one attempted to develop it or because of some other reason not zoning related.  
Suhadolnik
, 184 Ill. App. 3d at 176, 540 N.E.2d at 907.  
Casey's knew of the R-1 zoning when it pur­chased the property.  
Evanston
, 57 Ill. 2d at 430, 312 N.E.2d at 633.  Rezoning would clearly cause deteriora­tion of the surrounding residential properties and permit the transformation of those properties to other uses.  
Evanston
, 57 Ill. 2d at 430, 312 N.E.2d at 633.  There has been no change in the general character or existing uses in the neighbor­hood of the Burris Trust and Lyons proper­ties.    

The rezoning here was spot zoning.  There is clear and con­vinc­ing evi­dence that the rezoning ordinance in this case, as applied to plain­tiffs, is arbitrary, unreasonable, and bears no substan­tial relation to public health, safety, morals, or wel­fare.  

After the witnesses in this case were deposed, both sides filed motions for summary judgment.  See 735 ILCS 5/2-701(b) (West 1994) ("if a declaration of rights is the only relief asked, the case may be set for early hearing as in the case of a motion").  All the evi­dence that the parties wished to present was before the court.  It would have been better if the parties had filed a stipulation with the court that this case be decided on the depositions, without any further presentation of evidence, but the intent to follow that procedure seems clear.  Even if there is some issue of fact, if what is contained in the pleadings and affida­vits would have consti­tuted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a ver­dict, then a summary judgment should be entered.  
Fooden v. Board of Gover­nors of State Colleges & Universities
, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).  We conclude that summary judgment is appropri­ate in this case for whichever side pre­vailed.      

Accord­ingly we reverse and remand with directions that the trial court enter summary judgment in favor of plain­tiffs.          Reversed and remanded with directions.

KNECHT, J., concurs.

McCULLOUGH, J., dissents.

JUSTICE McCULLOUGH, dissenting:

The issue is whether the entry of summary judgment for defen­dants was improper because (1) either a genuine issue of material fact existed or (2) the docu­ments submitted to the trial court indicate the plaintiffs were entitled to summary judg­ment.  Plaintiffs argued the rezoning ordinance was arbi­trary, capri­cious, and without substan­tial benefit to the public health, safety, or welfare based on their analysis of the factors re­ferred to in zoning cases and that their experts had not admitted the ultimate issue, 
i.e.
, the rezoning was fairly debatable.  The trial court may draw inferenc­es from undisput­ed facts, but should not grant summary judgment if reasonable persons could draw divergent inferences from undisputed facts.  
Pyne v. Witmer
, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308 (1989). 

The parties in this case relied on the factors enumer­ated in 
County of Cook
, 12 Ill. 2d at 46-47, 145 N.E.2d at 69.  The majority determines that the decision in 
County of Cook
 does not stand for the proposi­tion that deference should be given to the zoning ordinance.  That was never argued by the parties, and the case relied on by the majority, 
Rodriguez
 (217 Ill. App. 3d at 1030, 578 N.E.2d at 61), (1) involved the question of the propri­ety of a dismissal of a complaint; (2) while question­ing the applica­tion of the 
County of Cook
 factors to cases not involving a property owner's challenge to the original zoning, never said no deference was to be given the municipali­ty's legisla­tive enact­ment; and (3) neverthe­less considered the sufficien­cy of the complaint in light of the 
County of Cook
 factors.  Further­more, this court has applied the principles announced in 
County of Cook
 to a case involving neighbors chal­lenging a rezoning ordinance and required that the presumption of validity of the rezoning ordinance be overcome by clear and convincing evidence.  
Westwood Forum
, 261 Ill. App. 3d at 912-17, 634 N.E.2d at 1156-59.  In addition to the 
County of Cook
 fac­tors, courts should also con­sider the need for the use pro­posed by the property owner and the care with which the community has undertaken its develop­ment planning.  
Westwood Forum
, 261 Ill. App. 3d at 917, 634 N.E.2d at 1159.  
No one factor is determina­tive, and a primary concern is whether the property in question is zoned in conformity with surround­ing uses and whether those uses are uniform and estab­lished.  
La Grange State Bank v. County of Cook
, 75 Ill. 2d 301, 309, 388 N.E.2d 388, 391
 (1979).  Where there is room for a legitimate difference of opinion concerning the reasonable­ness of the zoning classifica­tion or the question of reasonable­ness is fairly debatable, courts will not interfere with the legislative classifica­tion.  
Bredberg v. City of Wheaton
, 24 Ill. 2d 612, 625, 182 N.E.2d 742, 748 (1962); 
Bullock v. City of Evanston
, 5 Ill. 2d 22, 34, 123 N.E.2d 840, 846 (1954); 
Oliver Construction Co. v. Village of Villa Park
, 257 Ill. App. 3d 750, 753, 629 N.E.2d 199, 202 (1994).

The majority finds that the ordinance constituted spot zoning.  Although spot zoning is looked on with disfavor (
Reskin v. City of Northlake
, 55 Ill. App. 2d 184, 189-90, 204 N.E.2d 600, 603 (1965)), the current legal philosophy about spot zoning is that it is not 
per
 
se
 illegal, but it may be improper depend­ing on the application of the factors relating to the reasonable­ness of the zoning ordinance to the facts of the particular case (101A C.J.S. 
Zoning & Land Planning
 §44 (1979)).  In 
Truchon
 (70 Ill. App. 3d at 93, 388 N.E.2d at 252), the trial court's invali­dating of the ordinance rezoning a parcel from single-family residential to commercial to accommo­date a liquor store and bar, argued to be impermissi­ble spot zoning, was reversed, where the appellate court found room for a reasonable difference of opin­ion.

All experts, including plaintiffs' experts, agreed that the rezoning was the result of an honest difference of opinion on its suitability.  Defendants' experts clearly agree the action was appropriate and not arbitrary and capricious.  Plaintiffs' experts disagree with the action of the Village to varying degrees.  Ladley agreed that there was room for an honest differ­ence of opinion on the question of rezoning the subject proper­ties.  Hofferkamp testified that the negative impact on the surrounding properties outweighed the positive aspects of rezon­ing this site, but reluctantly conceded there was room for a fair debate on the question.  Kirchner, however, was more evasive.  He stated there was an honest difference of opinion, noting the vote of the Village's board of trustees.  He also stated that he would not testify it was irratio­nal, but would testify it was improper and further that anyone with his background and school of thought would agree it was improper.  According to Kirchner, there may be reasonable argument about getting new business into the Village, but not about zoning these particular pieces of property.  To Kirchner, zoning was not debatable in terms of its impact on residential values "and those sorts of things."  However, Kirchner's testimony that like-minded persons would agree and that the decision was not irrational does not refute the infer­ence that the issue of rezoning was fairly debatable.

If plaintiffs cannot prove a crucial element of their case, summary judgment is appropriate.  Uncontra­dicted expert testimony in a deposition may be used as a basis for summary judgment where it demonstrates no genuine issue of material fact remains and a verdict would have to be directed.  
Grote v. Estate of Franklin
, 214 Ill. App. 3d 261, 269-70, 573 N.E.2d 360, 365-66 (1991).  In spite of Kirchner's testimony, the only reason­able inference to be drawn from the evidence is that there was room for legitimate difference of opinion concerning the reasonable­ness of the classification and that the question of reasonable­ness of the rezoning was fairly debatable.

It is obvious from the testimony that the question of whether the rezoning of the subject properties was in conformity with surrounding zoning and whether the surrounding zoning was uniform and established depended on how large the expert drew the circle around the subject property.  However, the old commercial district began only 940 feet away.  The Knights of Columbus club was also nearby.  

There was some opinion that plaintiffs' property values would diminish, but there was no evidence by how much.  No appraisals were submitted or made.  There was some evidence that the values of plaintiffs' properties as residential property was diminished by the traffic in the area without the rezoning.  There was no evidence that rezoning would adversely affect health, safety, or morals, although there were speculative statements that an increase in criminal activity might arise from the location of a convenience store in this area.  The evidence was consis­tent, however, that the Casey's would enhance the general welfare of the public.  This is the best location in the town for this type of business because of the traffic flow.  It would increase income to the Village and promote employment.  One of the lots had been vacant for a long time.  The other had an older home.  There was testimony that the vacant lot was less suitable for residential purposes because of the traffic in the area.  The community had a substan­tial need for this type of commercial development from a competi­tion and a consumer's benefit standpoint.  The hardship imposed on plaintiffs does not necessari­ly outweigh the relative gain to the public.  

While balancing these factors would appear to create a question of fact, this balancing clearly establishes that there was room for a legitimate differ­ence of opinion concerning the reasonableness of the rezoning and that the question of the reasonableness of the rezoning was fairly debat­able, as a matter of law.  Plaintiffs have not met the clear and convincing burden of proof of the invalidity of the ordinance.  The burden of proof is heavy, and it is not met simply by putting on witnesses who would testify that, if they had the authority, they would not have voted for the ordinance.  
Siegel v. City of Chicago
, 127 Ill. App. 2d 84, 92, 261 N.E.2d 802, 806 (1970).  The judgment of the circuit court of Sangamon County should be affirmed.